IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY SESSION, 1998

FILED

June 30, 1998

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,     )
                        )        No. 01C01-9707-CC-00298
        Appellee        )
                        )        WILLIAMSON COUNTY
vs.                     )
                        )        Hon. Donald P. Harris, Judge
ELROY D. KAHANEK,       )
                        )        (DUI, Third Offense)
        Appellant       )

For the Appellant:

**Lee Ofman**
317 Main Street, Suite 208
Franklin, TN  37064

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Timothy F. Behan**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**Joseph D. Baugh, Jr.**
District Attorney General

**Mark Puryear**
Asst. District Attorney General
P. O. Box 937
Franklin, TN  37065-0937

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Elroy D. Kahanek, appeals the verdict of a Williamson County jury finding him guilty of driving under the influence, third offense. The trial court imposed a sentence of 11 months, 29 days, suspending all but 120 days, and assessed a fine of $5,000. The appellant now appeals his conviction, raising the following issues:

I. Whether the trial court erred by overruling the appellant's motion *in limine* to exclude evidence of the horizontal gaze nystagmus test;

II. Whether the trial court erred in restricting the appellant's cross-examination of Officer Hardcastle;

III. Whether the trial court erred in rejecting the appellant's special jury instruction relating to the "odor of alcohol;"

IV. Whether the trial court erred in instructing the jury to disregard portions of the appellant's testimony; and

V. Whether the trial court erred in commenting on the reliability of an intake, or, "Receiving Screen Form," required for the processing of detainees prior to incarceration.

After a review of the evidence and the applicable law, we conclude that the appellant's issues are without merit. The judgment of the trial court is affirmed.

## Background

On March 28, 1996 at approximately 6:30 p.m., Debbie Doebler was driving home on I-65 south in Williamson County. Ms. Doebler was following two vehicles: a small white automobile and a tractor trailer truck. The tractor trailer was in the far right hand lane and the white car was in the adjacent lane. Ms. Doebler observed the white car swerve, "like it was going to hit the truck." In response, she slowed her vehicle. The white vehicle swerved again, and, this time, the car hit the truck, traveling across the four southbound lanes of the interstate, bouncing off the concrete median barrier, and traveling back across the four lanes where it came to a stop in the far right hand

2

lane. Ms. Doebler, assuming that someone was injured, pulled onto the shoulder of the interstate and called 911 on her cellular phone.

Brentwood Police Officers Allen Hardcastle and David Graves responded to the scene of the accident. When Officer Hardcastle arrived at the scene, he observed a small white car sitting in the far right lane of the interstate. The vehicle had sustained extensive damage to the right front portion and left rear portion of the vehicle. The damage to the passenger side was consistent with those made by a tire. The vehicle's airbag was deployed in the wreck.

Shortly after arriving on the scene, the officers determined that the appellant was the driver of the white car. Upon first making contact with the appellant, Officer Hardcastle noticed that the appellant had a strong odor of alcohol about him and that he answered questions slowly. Also, the appellant's eyes were bloodshot. The appellant told Officer Hardcastle that, while he was traveling in the far right hand lane of the interstate, the tractor trailer truck attempted to make a lane change from the adjacent lane to the lane in which he was traveling, resulting in the accident. When asked by the officer whether he was injured or needed to go to the hospital, the appellant stated that he did not need any medical treatment. Officer Hardcastle did observe a small cut on the appellant's wrist, but no incapacitating injuries.

Based on his initial observations of the appellant, Officer Hardcastle believed that the appellant had been driving under the influence of alcohol. He proceeded to conduct three field sobriety tests, i.e., the Horizontal Gaze Nystagmus Test,[1] the "walk and turn" test, and the "one leg stand" test. During the"HGN" test, the appellant failed

---

[1]Nystagmus means a jerking of the eyes. Horizontal gaze nystagmus refers to a jerking of the eyes as they gaze to the side. Gaze nystagmus is observed in 50 to 60 percent of the entire population when the eyes are deviated as far as possible to one side. As people become intoxicated, the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct. The test is conducted by having the subject cover one eye and follow an object (the officer's finger in this case) with the open eye until the subject's eye is at an angle of 45° from his nose.

to have "smooth pursuit, his eyes pursued in one jerky motion to 45°. He had a [di]stinct nystagmus at max[imum] deviation on both eyes. He had onset of nystagmus prior to 45°." Officer Hardcastle next conducted the "walk and turn" test. The appellant was unable to complete the test as instructed; he raised his arms, swayed, and stumbled to the left, where he was caught by Officer Graves. The appellant then stumbled to the right, where he was caught by Officer Hardcastle. At this point, Officer Hardcastle terminated the test for the appellant's own safety. The final test administered was the "one leg stand," which required the raising of either foot six inches off the ground, while counting to thirty out loud. The appellant raised his arms, swayed, and put his foot down within two seconds of picking it up. The appellant admitted that he could not complete this test.

Officer Hardcastle concluded that the appellant's conduct during these tests was consistent with his initial observations that the appellant was under the influence of alcohol. Officer Graves confirmed Officer Hardcastle's results of the field sobriety tests and the appellant's statements at the scene. The appellant was arrested and transported to the Williamson County Jail.

The appellant, in his own defense, testified that, on February 12, his wife had surgery which revealed the spread of cancer throughout her body. The doctors informed the appellant and his wife that, without chemotherapy treatments, she had nine months to live. The chemotherapy treatments cost approximately four to six thousand dollars per treatment and his wife refused any treatment if their insurance company denied coverage. On the afternoon of the accident, the appellant was notified that his insurance would not cover his wife's chemotherapy treatments. The appellant testified that this news was emotionally upsetting, causing him to "cr[y] all afternoon."

4

At 5:30 p.m., the appellant left his Nashville office and went across the street to the Nashville Country Club "to wait for traffic to die down." At the restaurant, the appellant ordered a scotch and water. Shortly thereafter, a friend purchased the appellant a second scotch and water as a belated birthday present. The appellant left the restaurant at 6:00 p.m. and began his drive home on I-65 South. On the way home, he called his wife from his cellular phone and asked her if she wanted him to pick up some fast food for dinner. After ending his conversation with his wife, the appellant threw the telephone in the passenger side seat. Realizing that he had not turned the telephone off, he leaned over to pick the telephone up. At this point, the accident occurred. The appellant stated that, upon impact with the truck, his airbags exploded, causing burns and cuts on his arms. He added that the airbags caused his knees to hit the dashboard. The appellant testified that he told Officer Hardcastle that his "knees are killing me, I cannot perform this test."

Based upon this evidence, the jury returned a guilty verdict as to the offense of driving under the influence, third offense.

## I. Horizontal Gaze Nystagmus Test

The appellant, relying upon an unpublished opinion of this court, *i.e.*, State v. Cora Murphy, No. 01C01-9412-CC-00401 (Tenn. Crim. App. at Nashville, Oct. 6, 1995), aff'd by, 953 S.W.2d 200 (Tenn. Oct. 13, 1997), filed a motion *in limine* on January 9, 1997, to exclude evidence of the Horizontal Gaze Nystagmus Test as the State was required to establish that there is general acceptance of the test in the scientific community. The trial court denied the motion finding that the HGN test does not constitute a scientific test. On appeal, the appellant asserts that the trial court's ruling

is in "error and is contrary to existing law within the court's jurisdiction."[2]   Although conceding the error of the trial court's ruling, the State contends that any error in admitting the evidence of the HGN test was harmless.

Initially, we note that this issue is now governed by our supreme court's ruling in State v. Murphy, 953 S.W.2d at 200.  In State v. Murphy, the court held that the Horizontal Gaze Nystagmus test is a scientific test.   Murphy, 953 S.W.2d at 201.  In so ruling, the court stated:

> In our view, the HGN test does differ fundamentally from other field sobriety tests because the witness must necessarily explain the underlying scientific basis of the test in order for the testimony to be meaningful to a jury.
> . . .
> And there is another distinction . . . and it concerns measurement. . . . [W]hen an officer testifies that the subject's eye movement was rapid and very jerky at less than a 40 degree angle, that officer is testifying about a measurement that probably should be taken with a measuring device. Therefore, the accuracy of this testimony may be questionable in light of the officer's non-scientific measurement of a scientifically measurable phenomenon.

Id. at 203.

Since the HGN test is a scientific test, evidence resulting from the test must satisfy the requirements of Tenn. R. Evid. 702 and 703. Id. at 203.  Under these rules, the trial court must determine whether the evidence will substantially assist the trier of fact to determine a fact in issue and whether the facts and data underlying the evidence indicate a lack of trustworthiness.  See  McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 265 (Tenn. 1997), petition for cert. filed, 66 U.S.L.W. 3605 (Mar. 9, 1998) (No. 97-1469).    If  the scientific evidence is valid, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion

---

[2]We note that the appellant's trial was conducted on February 11-12, 1997, eight months prior to our supreme court's ruling in Murphy, 953 S.W.2d at 200.  Thus, at the time of the trial, the issue of whether the HGN test was a scientific test was pending before the supreme court. Moreover, different panels of this court had reached different results on this issue.  Compare State v. Jankowski, No. 03C01-9503-CR-00100 (Tenn. Crim. App. at Knoxville, Nov. 15, 1995), perm. to appeal denied, (Tenn. Apr. 1, 1996) with Murphy, No. 01C01-9412-CC-00401. Accordingly, the appellant's contention that the trial court failed to follow precedent is not a valid position, as there was no per se consistent precedent to follow.

or otherwise. Id. at 264. Moreover, the court must be assured that the opinion of the expert witness is based on relevant scientific methods, processes, and data, and not upon an expert's mere speculation. Id. at 265.

In the present case, Officer Hardcastle testified regarding the procedures involved in the administration of the HGN test and his law enforcement training and certification relevant to field sobriety tests. He also acknowledged the existence of other nystagmus in the eye other than horizontal and that they could be caused by factors other than alcohol. We cannot conclude that this testimony established Officer Hardcastle as being qualified by his "knowledge, skill, experience, training or education" to provide expert testimony that would "substantially assist the trier of fact [in] understand[ing] the evidence or determin[ing] a fact in issue." See Murphy, 953 S.W.2d at 201-202; see also State v. Grindstaff, No. 03C01-9704-CR-00139 (Tenn. Crim. App. at Knoxville, Mar. 23, 1998). As such, the trial court should have granted the appellant's *in limine* motion.

Notwithstanding the trial court's error in admitting such testimony regarding the HGN test, we find the court's error, at most, harmless, as there was more than sufficient evidence for a rational trier of fact to find the appellant guilty of driving under the influence. Tenn. R. App. P. 36(b). See, e.g., State v. Summers, No.03C01-9606-CR-00235 (Tenn. Crim. App. at Knoxville, Dec. 4, 1997); State v. Turner, No. 03C01-9604-CC-00151 (Tenn. Crim. App. at Knoxville, Jul. 9, 1997). In addition to the HGN test, Officer Hardcastle conducted the "walk and turn" test and the "one leg stand" test. There is no doubt that neither of these tests require expert testimony. General field sobriety tests are not "scientific tests," and, thus, not governed by Tenn. R. Evid. 702 and 703. See Turner, No. 03C01-9604-CC-00151 (citing State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988)). The results of these two non-scientific field sobriety tests in conjunction with the officers' initial observations of the appellant's demeanor, his admission of consuming alcohol prior to driving home, and eyewitness testimony

7

of the appellant's erratic driving were properly before the jury and are sufficient evidence from which a rational juror could infer that the appellant was under the influence of an intoxicant, impairing his ability to operate his vehicle. This issue is without merit.

## II. Cross-Examination of Officer Hardcastle

During cross-examination of Officer Hardcastle, defense counsel initiated a line of questioning regarding the officer's opinion of the fairness of the standardized field sobriety tests. Defense counsel then asked Officer Hardcastle: "If you were designing this test to cause imbalance and sway, would you have them have their feet standing apart like this or have one foot out about six inches off the ground?" The prosecutor objected to the question as being argumentative, stating that Officer Hardcastle had already answered defense counsel's questions regarding the fairness of the test. The trial court sustained the State's objection, finding that the question was posed as a hypothetical, that the officer had previously stated that he did not and does not design the test, and that the question "has nothing to do with this case."

"The right to cross-examination is fundamental, thus, the denial of this right to apprise the accused a fair trial is 'constitutional error of the first magnitude.'" State v. Henning, No. 02C01-9504-CC-00115 (Tenn. Crim. App. at Jackson, Jan. 9, 1997), perm. to appeal granted, (Tenn. Jul. 7, 1997) (quoting State v. Hill, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980)). Yet, the propriety, scope, manner and control of testimony and other evidence, including the scope of cross-examination, is within the sound discretion of the trial court, which will not be reversed absent an abuse of that discretion. See State v. Hutchinson, 898 S.W.2d 161, 172 (Tenn. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137 (1995); State v. Barnard, 899 S.W.2d 617, 624 (Tenn.

Crim. App.), perm. to appeal denied, (Tenn. 1994) (citing State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978)); Tenn. R. Evid. 611.

The scope of cross-examination extends to "any matter relevant to any issue in the case, including credibility." Tenn. R. Evid. 611(b). Defense counsel's inquiry as to the police officer's design of a hypothetical sobriety test was irrelevant to the issue at hand. Officer Hardcastle had, on more than one occasion, expressed his opinion as to the fairness of the field sobriety tests conducted in the present case. Moreover, considering Officer Hardcastle's testimony in its totality, we cannot conclude that the appellant was prejudiced by the court's ruling. Accordingly, we find no abuse of discretion by the trial court. This issue is without merit.

### III. Jury Instruction on Odor of Alcohol

The appellant next complains that the trial court erred by refusing his special instruction regarding the odor of alcohol. In pertinent part, the refused instruction reads:

> The bare fact that there was an odor of intoxicant on the Defendant's person is not sufficient to support a finding that he was driving under the influence of an intoxicant. Newby v. State, 388 S.W.2d 136, 138 (Tenn. 1965).

The trial court refused the appellant's request, finding that the instruction was "covered by [the] charge that requires [a] finding of impairment." The court determined that:

> This request may be confusing in that jurors may infer the court is stating odor of alcohol is in the Court's opinion the only evidence indicating that the defendant was under the influence.

Where the charge, as given, fully and fairly states the law applicable to the case, it is not error to refuse a special request. State v. Bush, 942 S.W.2d 489, 523 (Tenn. 1997), cert. denied, --U.S. --, 118 S.Ct. 376 (1997); State v. Taylor, 771 S.W.2d 387, 398 (Tenn. 1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3291 (1990). We find that

9

the jury instructions provided by the trial court adequately covered the applicable law on this subject. This issue is without merit.

## IV. Cross-Examination of the Appellant

On cross-examination of the appellant, the prosecuting attorney asked the appellant if there was any person at the Nashville Country Club who knew him and would those people have been able to testify as to the appellant's sobriety. The appellant responded that, if he had been intoxicated, those people would not have let him drive and someone would have taken him home or he would have called a limousine service to take him home. The prosecutor then requested a jury-out during which he asked the court to instruct the jury to disregard the appellant's statement, since the prosecutor was not able to introduce evidence of the appellant's two prior convictions for driving under the influence. The trial court ruled that the appellant's statement was unresponsive to the question asked by the prosecutor and was volunteered by the appellant. The jury was then instructed to disregard the appellant's statements. The appellant contests the court's ruling arguing that the court's instruction to the jury "was a comment on the evidence which is disallowed in Tennessee, Hooper v. State, 325 S.W.2d 561 (Tenn. 1959), and, further, that instruction cast doubt on the Defendant's credibility, thereby denying the Defendant his due process right to a fair trial under the Tennessee and United States Constitutions."

Contrary to the appellant's assertions, we agree with the State that there is no evidence that the trial court commented upon the evidence. Rather, the trial court only instructed the jury to disregard the appellant's statement as it was unresponsive to the prosecutor's "yes or no" question. As stated previously, the scope and control of the examination of witnesses rests within the sound discretion of the trial court; and this court will not interfere with the exercise of this discretion unless it clearly appears upon

10

the face of the record that the trial court abused its discretion when ruling.  See
Hutchinson, 898 S.W.2d at 172; Barnard, 899 S.W.2d at 624.  We fail to find that the
trial court abused its discretion in instructing the jury to disregard the appellant's
extemporaneous testimony.  This issue is without merit.


### V.  Trial Court's Comment Upon Reliability of Receiving Screen Form


In his final issue, the appellant complains that the trial court made improper
comments to the jury regarding the reliability of the intake or receiving screen form,[3]
which is required for the processing of a detainee.  This form was introduced into
evidence by the defense through the custodian of records at the Williamson County
Jail.  Initially, we agree with the State that the appellant has waived this issue for failure
to cite to that which he complains of.  Tenn. R. App. P. 27(a)(7).  This court will not
speculate as to the alleged errors of the trial court.  Notwithstanding waiver of this
issue, this court fails to find that the trial court made any improper comments to the jury
regarding the form's reliability.  Indeed, the video tape transcript of the trial indicates
that any comments made by the trial court were made during a jury out hearing.
Accordingly, there is no merit to this issue.


### Conclusion


After a review of the record before us, we affirm the judgment of conviction
entered by the Williamson County Circuit Court.

---

[3]The Receiving Screen Form, generated at the time the appellant was initially booked at
the jail, indicated that the appellant did not appear to be intoxicated.  However, testimony indicated
that the "no" response to this question was computer generated, and, must be manually changed
to indicate an affirmative response. As such, the responses on the screening form were subject
to human error.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
JERRY L. SMITH, Judge