# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 8, 2000 Session

## STATE OF TENNESSEE v. EDDIE L. COLEY, JR.

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Williamson County**
**No. II-895-228     Donald P. Harris, Judge**

---

**No. M1997-00116-SC-R11-CD - Filed October 13, 2000**

---

JANICE M. HOLDER, J., with whom E. RILEY ANDERSON, C.J., joins, dissenting.

I respectfully dissent. The admission of expert testimony on the reliability of eyewitness testimony is governed by our opinion in <u>McDaniel v. CSX Transp., Inc.</u>, 955 S.W.2d 257 (Tenn. 1997), which established the test for admissibility of scientific evidence in Tennessee. <u>McDaniel</u> requires a trial court to consider, based on a non-exclusive list of factors, "whether the evidence will substantially assist the trier of fact to determine a fact in issue and whether the facts and data underlying the evidence indicate a lack of trustworthiness." <u>Id.</u> at 265. Accordingly, <u>McDaniel</u> provides the trial court with a test to be applied on a case-by-case basis to admit or to exclude expert testimony.

In rejecting the expert testimony in this case, the trial court did not conduct a <u>McDaniel</u> hearing. This Court, therefore, is without an adequate record upon which to judge the propriety of the exclusion of the evidence under our own precedent. The effect of the majority's decision is to exclude from consideration under <u>McDaniel</u> one class of proffered scientific evidence. The majority's approach forecloses judicial recognition of future scientific advances in this area, a result seemingly in conflict with our rationale for adoption of the <u>McDaniel</u> standard. <u>Id.</u> at 262 (stating that formerly adopted <u>Frye</u> test for admissibility was criticized as "too restrictive of relevant evidence, particularly new or 'cutting edge' scientific theory"). The majority opinion effectively shuts the door to future legal development in this area by requiring a litigant to overturn Tennessee Supreme Court precedent before his proffered evidence could even be considered by a trial court.

I agree with the majority that our <u>Dyle</u> jury instruction adequately addresses those factors affecting eyewitness testimony that are within jurors' common understanding. The <u>Dyle</u> factors, however, share one common characteristic not found in the testimony proffered in this case: they relate to non-scientific factors affecting eyewitness testimony. I am unconvinced that the testimony omitted in this case is within the "common understanding" of the jury.

Most, if not all, of the proffered testimony is scientific in nature and therefore falls outside the realm of common knowledge. Cf. State v. Murphy, 953 S.W.2d 200, 202-03 (Tenn. 1997) (categorizing horizontal gaze nystagmus ("HGN") sobriety tests as "scientific" because of necessity of explanation of underlying scientific basis before test becomes meaningful to a jury). There are many scientific and legal publications regarding eyewitness identification, and the body of work, including case law, is growing. See generally Roger B. Handburg, Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury, 32 Am. Crim. L. Rev. 1013 (1995); Robert J. Hallisey, Experts on Eyewitness Testimony in Court – A Short Historical Perspective, 39 How. L.J. 237 (1995); Hon. D. Duff McKee, Challenge to Eyewitness Identification Through Expert Testimony, 35 Am. Jur. Proof of Facts 3d 1 (1996 & Supp. 1999); Gregory D. Sarno, Annotation, Admissibility, at Criminal Prosecution, of Expert Testimony on Reliability of Eyewitness Testimony, 46 A.L.R.4th 1047 (1986 & Supp. 2000). It is difficult to conclude that so much scientific study, scholarly debate, and comment have been engendered by what is simply a matter of common knowledge.

Even assuming that these matters are truly within jurors' common understanding, there still exists the question of validity of that understanding. Authorities indicate that, in reality, many commonly-held notions regarding the reliability of eyewitness testimony are wrong. See United States v. Smithers, 212 F.3d 306, 312 n.1 (6th Cir. 2000) (noting "many of the factors affecting eyewitness impressions are counter-intuitive"). Thus, the majority's per se rule may actually serve to sanction judicially and preserve for all time a common understanding that is, in fact, invalid.

Finally, the majority's contention that this evidence "may mislead and confuse, and it could encourage the jury to abandon its responsibility as fact-finder" speaks to a risk present in every case involving expert testimony. It does not warrant a per se rule. Accordingly, I would not adopt a per se rule of inadmissibility and would remand for a determination of admissibility under McDaniel.

I am authorized to state that Chief Justice Anderson joins in this dissenting opinion.

_____
JANICE M. HOLDER, JUSTICE

-2-