IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 10, 2004 Session

## STATE OF TENNESSEE v. GREGORY FAIRBETTER

**Appeal from the Criminal Court for Davidson County**
**No. 2003-T-296     Monte Watkins, Judge**

**No. M2004-00594-CCA-R3-CD - Filed October 1, 2004**

The defendant, Gregory Fairbetter, was charged with driving under the influence and violating the implied consent law. The defendant filed a motion to dismiss, arguing that because the videotape of his arrest had been destroyed by the state, he could not receive a fair trial. The trial court agreed and dismissed the driving under the influence charge. In this appeal, the state asserts that the trial court erred. The judgment of the trial court is reversed and the cause is remanded.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Helena W. Yarbrough, Assistant Attorney General; and Kristen Shea, Assistant District Attorney General, for the appellant, State of Tennessee.

Richard McGee, Nashville, Tennessee, for the appellee, Gregory Fairbetter.

### OPINION

In June of 2003, the defendant was indicted for one count of driving under the influence and one count of violation of the implied consent law. See Tenn. Code Ann. §§ 55-10-401, -406. Approximately eight months later, the defendant filed a motion to dismiss the charges because the state had destroyed the videotape of his arrest. He argued that the videotape was essential to the development of his defense and that a trial conducted without the videotape would be fundamentally unfair.

At the evidentiary hearing on the motion, Belle Meade Police Officer Shawn O'Brien testified that he arrested the defendant for driving under the influence on October 12, 2002. He stated that prior to initiating a traffic stop and activating the camera in his patrol car, he had observed the defendant driving off of the roadway. According to Officer O'Brien, he activated the video camera in his patrol car at the same time he activated the lights and siren. The officer testified that the

defendant was not unsteady on his feet but had watery eyes, slurred speech, and an "extreme" odor of alcohol. He contended that he observed the defendant for more than an hour from the time of the initial traffic stop until the time the defendant was booked at the jail. Officer O'Brien estimated that the video contained only thirteen minutes of evidence. It was his opinion that the videotape would have shown the defendant in the profile position because the defendant never faced the camera. According to Officer O'Brien, an officer trainee, Kenneth Dixon, was riding with him at the time of the arrest. Officer O'Brien stated that Dixon also observed the defendant's erratic driving before the arrest and his demeanor afterward.

After arresting the defendant, Officer O'Brien delivered the videotape to Officer Candice Mowry with a note attached that said, "Hold, D.U.I. evidence." Officer O'Brien stated that he did not review the videotape between the time that it was made and the time that it was requested by the District Attorney's Office. He recalled that when he asked Officer Mowry to return the videotape, she informed him that she had erased the videotape and placed the blank tape into a cabinet to be reused. Officer O'Brien testified that he was aware of no other instance of a videotape being destroyed in that office. After this incident, the police department changed its policy regarding the handling of tapes, requiring the arresting officer to maintain possession of videotapes of arrests. Officer O'Brien admitted that certain of the facts, such as the exact time and location of the traffic stop, were not in the arrest report but would have been on the videotape. He also conceded that the videotape would have shown the defendant's appearance, his driving, and his interaction with the officer.

Officer O'Brien admitted that he stopped the defendant based upon driving that occurred both before and after he activated his emergency equipment and video camera. He also conceded that the videotape was important because it would help him testify with greater accuracy. The officer also admitted that he described the odor of intoxicant as "extreme" based upon his smelling it when the defendant was inside the patrol car. He acknowledged that Dixon's name was not listed in any of the reports generated at the time of the arrest and had not been included on the list of witnesses for the state.

At the conclusion of the hearing, the trial court granted the motion to dismiss, observing as follows:

> There are three basic factors. The degree of negligence is factor number one. In considering this, the officer testified that he specifically wrote on the tape to "Hold for a D.U.I," and the tape was erased anyway. That, to me, constitutes negligence, because there was a duty, that duty was breached. So, that, in my mind, was negligence.
> Factor number two is significance of the destroyed evidence. I believe that the evidence was, in fact, significant.
> And, then, you have to go to factor three, the sufficiency of the other trial evidence. I don't know if the other trial evidence would be sufficient or not. Even the State admitted it would be somewhat troubling to them, or they would have some

trouble with that. But, what I find is that, without the missing evidence, then, having a trial would be fundamentally unfair . . . .

In the landmark case of Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court ruled that a prosecutor has a duty to furnish exculpatory evidence to the defendant upon request. Exculpatory evidence may pertain to the guilt or innocence of the accused and/or the punishment which may be imposed if the accused is convicted of the crime. State v. Marshall, 845 S.W.2d 228, 232 (Tenn. Crim. App. 1992). Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Thus, the duty to provide arises when the evidence is material, the evidence is favorable for the defense, and a proper request for production is made by the defendant. See United States v. Bagley, 473 U.S. 667, 675 (1985); Strouth v. State, 755 S.W.2d 819, 828 (Tenn. Crim. App. 1986). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. United States v. Agurs, 427 U.S. 97 (1976). "Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and evidence that could be used to impeach the state's witnesses." Johnson v. State, 38 S.W.3d 52, 55-56 (Tenn. 2001) (citing Bagley, 473 U.S. at 676; State v. Walker, 910 S.W.2d 381, 389 (Tenn. 1995); State v. Copeland, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998)).

In Arizona v. Youngblood, 488 U.S. 51 (1988), the United States Supreme Court held that a criminal defendant must show bad faith on the part of the state in order to establish a denial of due process for failure to preserve potentially useful evidence. In State v. Ferguson, 2 S.W.3d 912, 917 (Tenn. 1999), however, where the police lost a videotape of the defendant's field sobriety tests, our supreme court rejected the bad faith requirement articulated in Youngblood. Our high court concluded that the due process principles of the Tennessee Constitution are broader than those enunciated in the United States Constitution and that fundamental fairness, as an element of due process, requires that the state's failure to preserve evidence which could be favorable to the defendant be evaluated in the context of the entire record. Ferguson, 2 S.W.3d at 916-17. If the state has a duty to preserve the evidence, the reviewing court must conduct a balancing test based upon the following three factors:

(1) the degree of negligence involved;

(2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

(3) the sufficiency of the other evidence against the defendant.

Id. at 917. If a trial without the lost or destroyed evidence would be unfair, the trial court may dismiss the charges, provide a jury instruction, or take other steps necessary to protect the defendant's right to a fair trial. Id. In Ferguson, our supreme court ultimately determined that the defendant had not been deprived of his right to a fair trial by the loss of the videotape. Id. at 918

In this instance, the state had a duty to preserve the videotape because it was "material to the preparation of the defendant's defense." Id. Because the state destroyed the videotape before it could be viewed by the defendant, it breached that duty. As to the first of the Ferguson factors, the record establishes that the destruction of the tape was the result of simple rather than gross negligence.

As to the second factor, the evidence was significant. The videotape would have displayed the appearance and demeanor of the defendant at the time of the stop. Its probative value was limited, however, because the defendant refused all but one field sobriety test, the horizontal gaze nystagmus test, and the results of that test would not be admissible at trial. See State v. Murphy, 953 S.W.2d 200 (Tenn. 1997) (holding that horizontal gaze nystagmus tests are "scientific" and must, therefore, meet the requirements of Tennessee Rules of Evidence 702 and 703 to be admissible). Further, there was other evidence. Both Officer O'Brien and Dixon were eyewitnesses to the defendant's level of intoxication and his driving behavior.

Because the trial court granted the pretrial motion to dismiss, the third factor, the sufficiency of the convicting evidence, is the most difficult to address. The record establishes that the defendant refused all admissible field sobriety tests and also refused to submit to a breathalyser examination. The only evidence in the record is the testimony of Officer O'Brien. At the hearing, Officer O'Brien testified that the defendant had watery eyes and slurred speech and smelled of alcohol. While he conceded that the defendant was not unsteady on his feet, Officer O'Brien believed that the defendant was intoxicated and indicated in the arrest report that the effects of intoxication were "obvious." The arrest report also indicates that the defendant crossed the double yellow lines four times and the white line five times, once almost leaving the roadway. The defendant made no admissions. Dixon did not testify. While proof of the defendant's guilt is certainly less than overwhelming, it would have been sufficient to support a conviction for driving under the influence.

In summary, all of the Ferguson factors weigh favorably for the state. In our view, the defendant can be given a fair trial without the videotape. The trial court erred by dismissing the charge. A remand for a trial is appropriate. In accordance with Ferguson, the defendant should be permitted to cross-examine Officer O'Brien about the missing evidence and the trial court should provide a jury instruction on that issue. See Ferguson, 2 S.W.3d at 917 n.11 (providing a suggested instruction).

Accordingly, the judgment is reversed and the cause is remanded for trial.

_____
GARY R. WADE, PRESIDING JUDGE