FILED
01/12/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2023

**STATE OF TENNESSEE v. JEFFREY CLAY DALE**

**Appeal from the Circuit Court for Maury County**
**No. 28749    J. Russell Parkes, Judge**

_____

**No. M2023-00167-CCA-R3-CD**

_____

The Defendant, Jeffrey Clay Dale, was convicted by a Maury County Circuit Court jury of two counts of driving under the influence, third offense, which the trial court merged. *See* T.C.A. §§ 55-10-401(1) (2020) (driving under the influence of an intoxicant), -401(2) (driving with a blood- or breath-alcohol concentration of 0.08% or more), 55-10-402 (a)(3)(A) (2020) (subsequently amended) (third offense driving under the influence). The trial court sentenced the Defendant to eleven months, twenty-nine days, with 140 days to be served in jail and the balance on probation. On appeal, the Defendant contends that: (1) the evidence is insufficient to support his convictions and (2) the trial court erred in allowing a law enforcement officer to testify about his observations during field sobriety testing of the Defendant. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Jeffrey Clay Dale.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Brent Cooper, District Attorney General; J. Victoria Haywood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions arise from a law enforcement officer's finding the Defendant in a truck, the motor of which was running, parked partially on a public road and partially on the roadside. The relevant events occurred on March 24, 2020. The officer had been dispatched to the scene to respond to a report of a domestic disturbance at a nearby home. When he arrived, he found the Defendant seated in the driver's seat of a truck with his seatbelt fastened and holding an open beer in one hand. The officer testified that the

truck was parked partially on a public road and that he smelled the odor of alcohol on the Defendant. The officer observed signs of impairment, including the Defendant's "struggling with words," "stuttering," and having glassy, bloodshot eyes. The officer testified that the Defendant performed poorly on field sobriety tests. The Defendant told the officer he had consumed six to eight beers that evening, and after testing, his blood-alcohol content was determined to be 0.227%. After the officer arrested and handcuffed the Defendant, the Defendant fell over the officer as the Defendant tried to get into the patrol car. Video recordings of the interaction between the officer and the Defendant were received as trial evidence. Relevant to the issues presented on appeal, the recordings showed the Defendant's truck parked with most of the truck on a road but with a small portion of its body extending onto grass beyond the edge of the road. The recordings also contain footage of the Defendant speaking with the arresting officer, answering the officer's questions, and performing field sobriety tests.

The Defendant testified that he had been at his friend, "George's," home and had gone outside to sit in his truck when George and George's girlfriend began fighting. The Defendant said he had parked partially on George's yard because insufficient space existed for him to park on the driveway. The Defendant said that he started the truck's engine in order to use the heat on a cold night, that he planned to spend the night at George's house, that he hoped to go inside when George and the girlfriend stopped fighting, and that he would have walked to his home nearby, if necessary. The Defendant claimed that after he started the car, he removed the key, which he was able to do because it was worn, and placed it on the console. He said the truck would not "pull out" without reinserting the key.

In the bifurcated trial, the jury found the Defendant guilty of driving while under the influence of an intoxicant (DUI) and driving while his blood- or breath-alcohol concentration was 0.08% or more (DUI per se). In the second phase of the trial, the jury found that the Defendant was guilty of third-offense driving under the influence. After sentencing, the Defendant filed the present appeal.

# I

## Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions of two counts of driving under the influence under the alternative theories of intoxication and having a blood- or breath-alcohol concentration of 0.08% or more. The State counters that the evidence is sufficient as to both counts. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess;

[or]

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more

T.C.A. § 55-10-401(1), (2) (2020).

The Defendant argues that the State failed to prove that he was in physical control of a motor vehicle and that he was on a public roadway. Relative to physical control, our supreme court has said that the totality of the circumstances must be considered and that

-3-

the following factors are relevant in determining whether a defendant drove or was in physical control of a vehicle:

> "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise."

*See State v. Butler*, 108 S.W.3d 845, 850 (Tenn. 2003) (quoting *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993) (applying a totality of the circumstances approach in holding that the defendant was in physical control of a motor vehicle where the evidence showed that he was alone inside the vehicle, was behind the wheel, and possessed the keys)).

Regarding whether the Defendant was on a public roadway, the evidence viewed in the light most favorable to the State includes both the testimony of the arresting officer that the Defendant's truck was partially on a road and the video recordings, the latter of which corroborate the officer's account of the truck's location. The evidence shows that the Defendant was inside the truck with the key within his reach, that the motor was running, that the Defendant was able to speak to the arresting officer and perform field sobriety tests, and that the truck could be driven away if the key were inserted into the ignition. From this evidence, a rational jury could conclude that the Defendant was on a public roadway and was in physical control of the truck.

The Defendant has not challenged the sufficiency of the evidence to support the remaining elements of the DUI offenses, and we note no deficiencies in this regard. The officer observed signs of impairment; the Defendant admitted he had consumed a large quantity of beer; and the Defendant's blood-alcohol content surpassed the legal limit by a multiplier approaching three. The evidence is sufficient to support the Defendant's DUI and DUI per se convictions. He is not entitled to relief on this basis.

## II

### Admission of Evidence

The Defendant contends that the trial court erred in permitting the arresting officer, who was not qualified as an expert, to testify in limited fashion about the Defendant's performance on a horizontal gaze nystagmus (HGN) field sobriety test. The State counters that the court did not err because the officer's testimony was limited to non-expert matters and did not include information about the results of the test. Alternatively, the State argues that any error in admitting limited evidence about the HGN test was harmless in view of

the overwhelming proof of the Defendant's guilt. We conclude that the court did not abuse its discretion in admitting the evidence.

The HGN test is based on scientific evidence, as contrasted with common knowledge. *State v. Murphy*, 953 S.W.2d 200, 203 (Tenn. 1997). Because the average juror does not possess "scientific, technical, or other specialized knowledge" to understand the correlation between alcohol consumption and nystagmus, which involves eye movement, evidence surrounding HGN testing must be offered through an expert witness and must otherwise meet the requirements regarding admissibility of expert evidence. *See id.*, *see also* Tenn. R. Evid. 702, 703; *State v. Bell*, 429 S.W.3d 524, 527 n.5 (Tenn. 2014); *McDaniel v. CSX Transp.*, 955 S.W.2d 257 (Tenn. 1997). Our supreme court has explained

> [I]f a police officer testifies that the defendant exhibited nystagmus, that testimony has no significance to the average juror without an additional explanation of the scientific correlation between alcohol consumption and nystagmus. In effect, the juror must rely upon the specialized knowledge of the testifying witness and likely has no independent knowledge with which to evaluate the witness's testimony.

*Murphy*, 953 S.W.2d at 203.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

The trial court ruled that the State could not elicit testimony from the arresting officer about the "medical interpretation of the H.G.N." but permitted testimony about the Defendant's failure to follow the officer's instructions that the Defendant should move his eyes but not move his head during the test. The officer testified that a subject's failing to follow the instructions not to move his head when watching the officer's finger move across the subject's field of vision was a "clue" of impairment. The officer inquired whether he could testify about "lack of smooth pursuit," and the court instructed the witness he could not. The court then instructed the jury, "The jury will not consider anything relative to the pursuit. The Defendant's eye—the interpretation of the eyes is—this witness is not . . . qualified to give those opinions."

After the officer testified about the HGN test, the prosecutor questioned him about the nine-step-walk-and-turn test. When asked about the Defendant's performance on the latter, the officer said, "He did perform poorly on that one as well." The Defendant did not object, and the officer went on to testify about the specifics of the Defendant's performance on the walk-and-turn test.

The video recordings of the investigation and arrest were played for the jury, and they showed that the Defendant moved his head at times during the HGN test and that he did not move his eyes at times during the test. The arresting officer was asked to testify about the Defendant's "inability to follow instructions" but to avoid "whatever was in the eyes." As one of the videos played, the officer said, "So at this time, he was not following my finger at all with his eyes, nor with his head." The trial court overruled a defense objection and stated, "He can't interpret the movement of the eyes." The officer testified that the Defendant said, "left, right, left, right," which was not an instruction the officer had given the Defendant. The officer then indicated a portion of the recording in which the Defendant had moved his head to follow the officer's moving finger.

Evidence of the Defendant's failure to follow instructions during the HGN test was relevant because, as the officer testified, the Defendant's failure to follow instructions was an impairment clue. The officer did not testify about his observations of nystagmus or smooth pursuit or their significance to the issue of impairment. *See State v. Darrell E. Childress*, No. M2016-00799-CCA-R3-CD, 2016 WL 7468206, at *6 (Tenn. Crim. App. Dec. 28, 2016) (holding that the trial court did not err in permitting an officer's testimony about the defendant's failure to follow instructions during the HGN test where the officer did not testify about the test results). When the officer asked the court whether he could testify about "lack of smooth pursuit," the court did not permit it and instructed the jury to disregard the question. The jury is presumed to follow the court's instructions. *See, e.g.*, *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998). Upon review, we conclude that the trial court did not abuse its discretion in admitting the evidence. *See Franklin*, 308 S.W.3d at 809.

To the extent that the Defendant's argument relies on the officer's statement, after testifying about the HGN test, that the Defendant did not perform satisfactorily on the walk-and-turn test "as well," we again note the lack of objection to this testimony. This testimony was brief and no more than obliquely referenced the HGN test. More significantly, the jury was instructed that the witness was not an expert and that it should disregard any mention of the HGN test results. Again, we presume that the jury followed the court's instructions. *See Williams*, 977 S.W.2d at 106.

The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____

ROBERT H. MONTGOMERY, JR., JUDGE