IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. ROBERT JARNAGIN

**Direct Appeal from the Criminal Court for Hamblen County
No. 97-CR-181, Honorable James E. Beckner, Trial Judge**

**No. E1998-00892-CCA-R8-CD - Decided
May 12, 2000**

The defendant appeals his convictions and sentences for improper passing and driving under the influence. We affirm the trial court as we are not persuaded that insufficient evidence supported the convictions, that the admission of the breathalyzer results was error, that the admission of the field sobriety results was error, or that the sentences were excessive.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

WILLIAMS, J. delivered the opinion of the court, in which GLENN, J,. joined. TIPTON, J., filed a concurring opinion.

Carl R. Ogle, Jr., Jefferson City, Tennessee, for the appellant, Robert Jarnagin.

Paul G. Summers, Attorney General and Reporter, Erik W. Daab, Assistant Attorney General, C. Berkeley Bell, Jr., District Attorney General, and John Dugger, Jr., Assistant District Attorney, for the appellee, State of Tennessee.

### OPINION

The defendant, Robert Jarnagin, appeals from Hamblen County Criminal Court convictions and sentences for improper passing and driving under the influence (DUI). See Tenn. Code Ann. §§ 55-8-121, 55-10-401(a)(2). After a pre-trial hearing, the trial court denied the defendant's motion to suppress evidence from field sobriety tests and a breathalyzer test. On guilty verdicts for both charges, the trial court sentenced the defendant to eleven months and twenty-nine days for the DUI and thirty days for the improper passing. The trial court then ordered the defendant to serve ten days for the convictions, concurrently, and imposed probation for the remainder of the sentences. The defendant appeals, asserting that:
   (a) the trial court erroneously failed to suppress the field sobriety tests results;
   (b) the trial court erred by finding that the breathalyzer test result met the criteria for admissibility established by the Tennessee Supreme Court in State v. Sensing, 843 S.W.2d 412 (Tenn. 1992);

(c)  the evidence was insufficient to support the verdicts; and

(d) the trial court imposed an excessive sentence.

We affirm the judgments and sentences from the trial court.

## FACTS

From the jury's guilty verdicts, we review the facts in a light most favorable to the state.  On July 4, 1997, Morristown Police Officer Bob Cleveland observed a vehicle, proceeding at a high rate of speed, illegally pass a van on a double-line.  Cleveland activated his emergency equipment and began an unsuccessful pursuit.  He radioed a description of the vehicle and then responded to an emergency call involving a one-car accident.

On the scene, he found the defendant with Officer Mark Campbell.  The defendant had a laceration on his face and stated that he had recently consumed three or four beers, as well as a substantial amount of alcohol the preceding evening.  Noting the defendant's slurred speech and an odor of alcohol, the officers administered field sobriety tests.  After the defendant performed the tests, the officers arrested him for DUI.  Several times, the defendant falsely alleged that he was a Knox County deputy and expressed concern over the incident's effects on his law enforcement career.

On June 25, 1998, the trial court held a hearing on the defendant's motion to suppress evidence.[1]  The defendant first asserted that the results from one of the administered field sobriety tests, the heel-to-toe test, were inadmissible because that test was conducted with no line, either natural or drawn by the officers, for the defendant to walk. The trial court denied that motion, characterizing the issue as one of credibility to be evaluated by the jury.  The defendant also attacked the admissibility of the breathalyzer test, asserting that the administering officers did not satisfy the requirements established by the Tennessee Supreme Court in Sensing.

The defendant testified at this hearing, asserting that he had sustained a head injury and a lacerated lower lip during the automobile accident.  The defendant testified that cotton, given to him by the officers to absorb blood from the wound inside his mouth, remained in his mouth while the officers administered the breathalyzer test.  The defendant further asserted that air bubbled through his wound or lips and that blood flowed from his mouth as he blew on the breathalyzer tube.  The defendant insisted that the officers neither checked his mouth nor asked if he had anything in his mouth prior to the breathalyzer test.

Despite the defendant's insistence that Campbell had administered the breathalyzer test, Cleveland testified that he actually gave the test.  Cleveland testified that he was certified by the Tennessee Bureau of Investigation to operate the Intoximeter EC-IR device, that he had observed

---

[1]  The state apparently stipulated that the results of a horizontal gaze nystagmus (HGN) test were inadmissible.  See State v. Murphy, 953 S.W.2d 200, 203 (Tenn. 1997) (Evidence regarding HGN test results must be entered by expert testimony.).

-2-

the defendant for twenty minutes as required, and that, under his instructions, the defendant spat the cotton from his mouth twenty minutes prior to the test. Cleveland said that he accidentally typed in the name of Campbell as the test administrator. Cleveland testified that the defendant rejected treatment from E.M.S. at the scene. Cleveland did admit that he did not intrusively check the defendant's mouth and did not shine a light into his mouth in search of foreign objects before administration of the exam.

The trial court determined that the evidence presented a credibility question for the jury and that the proof did not, as a matter of law, preclude admissibility of the test result. The trial court therefore denied the motion. At trial, however, the trial judge advised the parties that case law indicated that the trial court must rule on a <u>Sensing</u> motion and admitted the evidence.

At trial, Cleveland reiterated his testimony and also testified that he observed no blood in the clear tube of the EC-IR. Officer Campbell testified he found a red Chevrolet Beretta off the road, after Cleveland placed the radio alert for a red Beretta. Sergeant Tony Belisle affirmed that Cleveland administered the test. Belisle said that he advised Cleveland that they needed to remove the cotton from the defendant's mouth and that they gave the defendant a paper towel or similar object, too large to fit in the mouth cavity, to apply to the exterior cut.

## ANALYSIS

### Suppression Hearing

This Court treats a trial court's findings of fact at a suppression hearing with substantial deference, requiring a preponderance of evidence to overturn those findings; however, this Court applies the law de novo to those facts. <u>See</u> <u>State v. Crutcher</u>, 989 S.W.2d 295, 299 (Tenn. 1999); <u>see</u> <u>also</u> <u>State v. Edison</u>, 9 S.W.3d 75 (Tenn. 1999) (A trial court's findings on a <u>Sensing</u> admissibility challenge are presumed correct on appeal unless the preponderance of the evidence is to the contrary.). Further, this Court may review the evidence presented both at pre-trial hearings and at trial in an appeal from a trial court's denying a motion to suppress. <u>See</u> <u>State v. Henning</u>, 975 S.W.2d 290, 299 (Tenn. 1998).

### Field Sobriety Tests

The defendant asserts that the two field sobriety tests performed on the defendant were not conducted in a manner sufficient to establish reliability and that the results should have been suppressed. General field sobriety tests are not scientific tests. <u>See</u> <u>State v. Gilbert</u>, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988); <u>see</u> <u>also</u> <u>State v. Murphy</u>, 953 S.W.2d 200, 202-04 (Tenn. 1997) (Field sobriety tests generally involve "an officer's objective observation of [a] subject's physical characteristics.").

The officers administered two field sobriety tests. First, they conducted a one-legged stance test. The participant lifts either leg approximately twelve inches from the ground and counts out

"one thousand one, one thousand two, . . . one thousand thirty." Cleveland testified that the defendant dropped his foot three times in the first ten seconds of the test. The defendant also raised his arms, and Cleveland testified that this response is indicative of intoxication. The defendant continued until his count of approximately twenty-five and then quit.

The second and final test was the heel-to-toe test. As in the first test, the officer advises the participant not to begin until he is told, after the officer describes the task. Cleveland testified that ability to follow instructions is one indicator of sobriety. Although a participant walks a line in this test, Cleveland testified that no line was available on the roadway. Therefore, Cleveland instructed the defendant to walk nine steps in an imaginary straight line, heel-to-toe, counting the steps aloud. The defendant was instructed that on reaching the ninth step to pivot on the lead foot and return to the officer in the same manner. Cleveland testified that on the first three steps the defendant crossed his legs without touching his heel to his toe. Cleveland also testified that the defendant began this test prematurely.[2] Cleveland said that on reaching the ninth step, the defendant did a "quick swoop turnaround" instead of pivoting and returned to him without touching heel to toe.

The defendant asserts that the officers should have found a natural line or made a natural line for the heel-to-toe test. The trial court concluded that the heel-to-toe procedure tests a defendant's ability to follow directions and maintain balance, not just that defendant's ability to walk on a line. See Murphy, 953 S.W.2d at 202-04. See, e.g. , State v. George Washington, No. 02C01-9710-CR-00408 (Tenn. Crim. App. filed December 10, 1998, at Jackson). We note that the testimony accordingly described the defendant's coordination and compliance with instructions, not his movement along a straight line.

The defendant also states that the officers did not perform sufficient investigation regarding potential head injury before administering the field sobriety tests. We agree with the trial court's conclusion that this assertion addresses the sufficiency, not the admissibility, of the evidence. This issue is without merit.

### Sensing Requirements

The defendant's blood alcohol concentration, determined by officers operating a breathalyzer, was .18 percent, in excess of the minimum .10 level required to prove DUI as charged. See Tenn. Code Ann. § 55-10-401(a)(2). The defendant asserts that this test result was erroneously entered into evidence because the state did not establish admissibility prerequisites. See Sensing, 843 S.W.2d 412. Prior to the Tennessee Supreme Court's Sensing decision, expert testimony from an operator familiar with the pertinent technical bases of a breathalyzer was necessary for proper admission of test results into evidence. See State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995); see also Tenn. R. Evid. 702, 703. However, breathalyzers provide visual readings representing their measurements, "with nearly infallible accuracy," of the "constant ratio between the amount of

---

[2] According to the defendant's testimony at trial, he began the test prematurely because as an auxiliary Knox County Sheriff's Deputy he was familiar with the procedure.

alcohol in the blood flowing through the lungs and the amount of alcohol in the deep lung breath." Id. at 416. Given the state of this technology, the Tennessee Supreme Court relaxed admissibility requirements in their Sensing decision, a case involving an Intoximeter 3000 breathalyzer: "We hold that it is no longer necessary for a certified operator of an evidentiary breath testing instrument to know the scientific technology involved in the function of the machine." Id.

Absent expert testimony from a certified operator, the Sensing decision did require that the "State must establish the competency of the operator, the proper operation of the machine and that the testing procedures [were] properly followed," by testimony:
>            (1) that the tests are performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation;
>            (2) that the officer was properly certified in accordance with those standards;
>            (3) that the evidentiary breath testing instrument used is certified by the forensic services division, was tested regularly for accuracy, and was working properly when the breath test was performed;
>            (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate;
>            (5) . . . that [the testing officer] followed the prescribed operational procedure; [and]
>            (6) [that the officer can] identify the print-out record offered in evidence as a result of the test given to the person tested.

Sensing, 843 S.W.2d at 416. The defendant, asserting that the state failed to sufficiently establish elements (3)-(6), must provide a preponderance of evidence contrary to the trial court's findings. See State v. Edison, 9 S.W.3d 75 (Tenn. 1999).

In the instant case, the officers used an EC-IR, and we now consider applicability of the Sensing criteria in cases involving devices other than the Intoximeter 3000. Absent expert testimony, the Tennessee Supreme Court imposed these criteria in a case involving an ALCOMAT breathalyzer. See Bobo, 909 S.W.2d at 789. In a subsequent case involving a Patton 1400 breathlyzer, a panel of this Court noted that the Bobo decision characterized the Sensing factors as "unambiguous admissibility requirements," id., and speculated that this language "implies that the Sensing requirements must be met every time the state attempts to admit breath results." State v. Deloit, 964 S.W.2d 909, 913-14 (Tenn. Crim. App. 1997). Therefore, the state has only two options: Enter breathlyzer results by expert testimony or by satisfying the Sensing requirements. See id.

The Deloit decision was not appealed, and neither that opinion nor the Bobo opinion provide specific comparisons of the involved breathalyzers and the Intoximeter 3000. In the instant case, the defendant stipulated that the EC-IR device is, independent from its actual application in a given case, a valid means for testing blood alcohol content. Our concern: Are the technical bases of the EC-IR sufficiently congruent with those of the Intoximeter 3000, and impliedly with those of the ALCOMAT and Patton 1400, such that the Sensing factors govern admissibility of results from the device into evidence? For example, does the presence of articles or substances in the mouth

invalidate a reading?

Even in cases involving the Intoximeter 3000, compliance with the factors as originally established may be modified relative to the device's parameters. In State v. Cook, 9 S.W.3d 98, 100-01 (Tenn. 1999), the defendant advised an officer that he had nothing in his mouth prior to an Intoximeter 3000 test, when he actually had dentures with a cotton pad. The officer testified that had the defendant answered the question truthfully, he would have had the articles removed, but in any event their presence did not invalidate the results, because the device would alert the operator that readings were coming from alcohol in the cotton pad and not from deep lung breath. See id.

We do not hold that objects or substances in a defendant's mouth per se invalidate readings from an EC-IR. Such conclusion is not warranted by the record. Although prior decisions do not definitively mandate application of the Sensing requirements to this case, they do provide some guidance. Tennessee courts recognize that such devices are designed and constructed to perform their tasks with monotonous consistency, these machines neither independently administer the tests nor control the context of their operation. They require maintenance and verification of calibration. Most importantly, they do not testify. The Sensing decision noted that the human operator still performs these functions. Although questions remain regarding the universal application of the Sensing test, we conclude that, absent expert testimony, its requirements effectively evaluate the reliability of the human component of testing conducted with an EC-IR device.

In light of the Cook decision, the most significant immediate question involves the effect of articles in the mouth. As noted, we can not determine the effect of such articles or substances on an EC-IR reading. However, we conclude that the pertinent Sensing requirement was properly established.

At the pre-trial hearing in the instant case, the defendant testified that he had both cotton and blood in his mouth during the test and that air was blowing through a perforation in his lower lip. Officers testified, however, that he was under observation for twenty minutes, that no blood was observed in the clear breathalyzer pipe, that the officers did not hear the asserted gurgling sound of air escaping, and that the officers did have him remove the cotton from his mouth and did not give him any additional cotton before the exam. See State v. Edison, 9 S.W.3d 75 (Tenn. 1999).

The defendant asserts that police must, after a defendant has spit out objects and asserted that nothing else is in his mouth, physically intrude into that defendant's mouth and search it with a flashlight. We find no case law establishing such a requirement. See generally State v. Cook, 9 S.W.3d 98 (Tenn. 1999) (The defendant, despite his having dentures, told the officer that he had nothing in his mouth.). The officers had the defendant spit the cotton from his mouth, asked the defendant if he had anything else in his mouth, and, after a negative answer, observed the defendant for the requisite twenty minutes. We hold that the Sensing criteria do not require a forced intrusion into a defendant's mouth after that defendant has stated that he has no foreign objects in his mouth. Consequentially, we do not find it necessary for officers to search a defendant's mouth with a flashlight after such assertion by a defendant.

Regarding accuracy of the breathalyzer device, the record indicates that the device was tested April 28, 1997, and May 6, 1997, for accuracy. We conclude that factor (3) was satisfied.

We are also unpersuaded by further arguments regarding operational procedure and identification of the print-out. The defendant's name is on the test results, and the results were signed and dated by the defendant immediately following the test. Cleveland identified this print-out. As noted, Officer Cleveland testified that he believed Campbell would administer the test and entered Campbell's name by mistake. Although Cleveland did not know that he could erase that error, Campbell testified that the data could be edited. The defendant asserts that this lack of familiarity with the testing device indicates that Cleveland could not properly perform the test, thereby invoking factor (6) and barring admission. The defendant has not established by a preponderance of the evidence that the officers did not follow requisite procedures or that the print-out was not properly identified. These <u>Sensing</u> issues are without merit.

### Sufficiency of Evidence

Having determined that the results from the field sobriety tests and the breathalyzer test are admissible, we address the defendant's assertion that insufficient evidence supports the verdicts against him. When a defendant challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." <u>See</u> Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court neither reweighs nor reevaluates the evidence. <u>See</u> <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. <u>See</u> <u>Liakas v. State</u>, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>See</u> <u>State v. Tuttle</u>, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. <u>Id</u>. In <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. <u>See</u> <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982); <u>Grace</u>, 493 S.W.2d at 476.

The evidence, in a light most favorable to the state, established that Cleveland saw a red Beretta illegally pass a van at a high rate of speed. He unsuccessfully attempted to apprehend the vehicle, and minutes later a responding officer found a vehicle matching that description and driven

by the defendant wrecked in a ditch in the immediate area. The officers observed the defendant's slurred speech and an odor of alcohol. After examination by E.M.S. and the defendant's refusing medical transport by E.M.S., the officers administered field sobriety tests, which the defendant performed unsatisfactorily. The defendant's breathalyzer results showed .18, in excess of the level defining intoxication under Tennessee Code Annotated § 55-10-401(a)(2).

The jury heard testimony from the defendant, denying excessive consumption of alcoholic beverages, as well as supporting testimony by friends and family. The jury also heard the assertions regarding head injury, other attacks against the field sobriety tests, and the defendant's assertion that a vehicle pulled suddenly in front of him. The defendant admitted that he lied, both to the officers and at the hospital, when he stated that he was a Knox County Sheriff's Deputy. The jury is the trier of fact and evaluates the evidence and the credibility of witnesses. The jury performed that function, and we do not find the preponderance of evidence necessary to overturn its verdict. This issue has no merit.

**Sentencing**

By statute, one convicted of their first offense of DUI must serve between forty-eight hours and eleven months and twenty-nine days in a county jail or workhouse. See Tenn. Code Ann. §§ 55-10-401, -403(a)(1). For his DUI conviction, the defendant received a sentence of eleven months and twenty-nine days. For the improper passing conviction, a Class C misdemeanor, he received thirty days. See Tenn. Code Ann. §§ 55-8-103, -121. The trial court ordered that the defendant serve ten days of the DUI sentence and one day of the illegal passing sentence, concurrently, with the remainder of the eleven months and twenty-nine days on probation. The trial court allowed for service in forty-eight hour increments.

In sentencing for a misdemeanor conviction, the trial court must provide either a hearing or a reasonable opportunity to be heard by a defendant regarding the appropriate sentence. See Tenn. Code Ann. § 40-35-302(a). Unlike the procedure for felony sentencing, a misdemeanant is not entitled to a presumption of the minimum sentence, see State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994), and, if weighing of the factors and consideration of the principles of sentencing render such decision appropriate, a misdemeanant may be required to serve up to 75% of his sentence before release on alternative sentencing, see Tenn. Code Ann. § 40-35-302(d). The trial court applies the enhancing and mitigating factors in calculating the percentage of the sentence to be served in confinement, but the trial judge need not place findings of fact on the record. Rather, that court must only avoid arbitrarily imposing incarceration. See State v. Troutman, 979 S.W.2d 271, 273-74 (Tenn. 1998).

The trial court found that the defendant's actions[3] created a great potential for bodily injury to a victim. See Tenn. Code Ann. § 40-35-114(16). We agree. See State v. Carey Monger, No.

---

[3] The trial court noted that the defendant had passed a vehicle on a double-line and crashed into a ditch.

03C01-9503-CR-00075 (Tenn. Crim. App. filed May 30, 1996, at Nashville) (The trial court imposed factor (16) as the only enhancing factor for 10 days confinement on a first offense DUI when the driver had been involved in an accident.). The trial court balanced that enhancing factor against two mitigating factors: the defendant's lack of a criminal history and an absence of a sustained intent to violate the law. See Tenn. Code Ann. § 40-35-113(11),(13). That court then noted the number of similar cases docketed on the court and concluded that DUI was a severe problem in the area. Thus, incarceration, exceeding the statutory minimum, was necessary for deterrence. See Tenn. Code Ann.§ 40-35-113(11). We find that the trial court's imposing service of approximately 3% of the total potential sentence does not, under these circumstances, constitute error. This issue has no merit.

## CONCLUSION

We affirm the judgments and sentences from the trial court.