# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
May 8, 2001 Session

## STATE OF TENNESSEE v. RUSSELL SNIDER

**Appeal from the Criminal Court for Shelby County**
**No. 99-05438     Chris Craft, Judge**

---

**No. W2000-01240-CCA-R3-CD  - Filed June 26, 2001**

---

The Defendant, Russell Snider, was convicted by a jury of third offense driving under the influence (DUI).  He was sentenced to eleven months, twenty-nine days, with four months and twenty-nine days suspended.  In this appeal as of right, the Defendant asserts (1) that he was prejudiced by the video recording of his performance of field sobriety tests because the video recording depicts an unqualified officer performing the horizontal gaze nystagmus test and (2) that the DUI sentencing statute is void for vagueness because it fails to give a person of ordinary intelligence fair notice that his or her conduct is forbidden by the statute.  We hold that the Defendant was not prejudiced by the admission of the video and that the DUI sentencing statute is not void for vagueness.  Therefore, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined.  L. TERRY LAFFERTY, SR.J., not participating.

Ronald Lucchesi, Memphis, Tennessee, for the Appellant, Russell Snider.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William L. Gibbons, District Attorney General; and James Powell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The proof at trial established that on November 15, 1998, Officer M. McCollum of the Memphis Police Department observed the Defendant driving a 1975 Oldsmobile about ten to fifteen miles over the speed limit in a Memphis residential neighborhood.[1]  The vehicle did not have a

---

[1]In lieu of a transcript of evidence, the Defendant  filed a statement of evidence in this case.  Thus, the facts upon which our decision is based are derived from that statement of evidence and the videotape of the field sobriety tests.

license plate. Officer McCollum testified that he activated his blue lights and siren, but the Defendant did not stop until he reached his home, which was several blocks away.

Officer McCollum testified that the Defendant pulled into his side yard and exited his vehicle. According to the officer, the Defendant had a strong odor of intoxicants about his person; he had bloodshot and watery eyes; he was swaying; his reactions were slow; his speech was slurred; he was "thick-tongued"; and his clothes were soiled and disarranged.

Officer McCollum testified that field sobriety tests were administered to the Defendant. He explained that in one test the Defendant did not touch his heels to his toes; he used his arms to balance; and he stepped off the imaginary line upon which he was asked to walk. He said that when the Defendant was administered the one-leg stand test, the Defendant used his arms to balance; he put his foot down; and he counted only to fifteen.

Officer B. Coppley of the Memphis and Shelby County DUI Squad was the officer who administered these field sobriety tests, which were videotaped. Officer Coppley also offered the Defendant a breath test, which the Defendant refused after being told that he had failed the field sobriety tests. The videotape of these field sobriety tests was played for the jury. In addition to the tests about which Officer McCollum testified, the videotape included footage of Officer Coppley administering a horizontal gaze nystagmus test. Prior to the admission of the tape, the Defendant objected to the video showing Officer Coppley administering the horizontal gaze nystagmus test because Officer Coppley was unqualified to administer that test. After a jury-out hearing, the trial court ruled that the tape would be admitted, but the jury would be instructed not to consider this test, as the officer was not qualified to administer it.

The Defendant testified that on the day in question, he had been working on his formerly-inoperable 1975 Oldsmobile. While test-driving the vehicle, the Defendant had gone to purchase gasoline, and he was on his way home prior to the arrest. The Defendant admitting drinking one beer that day, but he asserted that he was not intoxicated and that his driving ability was unimpaired. He further testified that he did not stop immediately because the police car did not have the siren on and he did not see the blue lights. Once he noticed the blue lights, the Defendant proceeded one block further and stopped at his own home. The Defendant believed he had passed the field sobriety tests, and when he was advised that he had failed those tests, he chose not to take the breath alcohol test.

Beverly Snider, the Defendant's wife, testified that her husband had been working that day on their second automobile, which had not been operating in some time. She said that her husband probably had a beer, but he never appeared to be under the influence of intoxicants. Ms. Snider stated that she never heard a police siren, and she was surprised to realize that her husband was under arrest in the side yard.

The Defendant's next-door neighbor, Debbie Oliver, testified that she was present when the Defendant was arrested. She asserted that the Defendant did not appear to be intoxicated or under the influence of intoxicants. Like Ms. Snider, she never heard a siren.

Following the proof and verdict of guilty of DUI, the Defendant stipulated that he had been previously convicted of DUI on June 11, 1986 and again on March 23, 1990. The Defendant was then convicted of third offense DUI.

ADMISSION OF VIDEOTAPE

In this issue, the Defendant presents a rather novel argument. He essentially asserts that the continuing practice of the Memphis Police Department of videotaping the administration of the horizontal gaze nystagmus test by an officer not qualified to testify at trial about the results of that test violates the due process rights of defendants by tainting otherwise exculpatory evidence. In State v. Murphy, 953 S.W.2d 200 (Tenn. 1997), our supreme court held that testimony concerning the horizontal gaze nystagmus field sobriety test "constitutes 'scientific, technical, or other specialized knowledge.' As such, it must be offered through an expert witness and must meet the [evidentiary] requirements" for expert testimony. Id. at 203 (quoting Tenn. R. Evid. 702). The Defendant claims that the Memphis Police Department routinely and knowingly administers this test by persons who are not qualified as expert witnesses and who will not be allowed to testify about the test at trial. The test is videotaped along with the other field sobriety tests. Oftentimes, according to the Defendant, the videotape of the field sobriety tests will constitute exculpatory evidence because the person performing those tests will perform in a sober manner. By having those tests on videotape, the jury is able to see for itself the defendant's performance on those tests and therefore independently evaluate whether the defendant was intoxicated. However, the Defendant argues that by administering the horizontal gaze nystagmus test, the Memphis Police Department "negates the exculpatory benefits of the video when a jury sees a person perform well on the video, but is then arrested when the Police Officer looks into the defendant's eyes and performs this test. . . . A jury is left with the sense that, while this person appears to be unimpaired, the Police Officer, for some reason, still saw fit to arrest him for DUI." The Defendant argues that this type of scenario is precisely what happened to him in this case and that he was prejudiced because of it. He therefore asks this Court to reverse his conviction.

In this case, Officer Coppley did perform the horizontal gaze nystagmus test on the Defendant, the test was videotaped along with the other field sobriety tests, and the trial court ruled that the results of the test were inadmissible because Officer Coppley was not qualified as an expert witness to administer and testify about the test. Because the trial court found the results of the test to be inadmissible, it instructed the jury not to consider the test. Nevertheless, the Defendant asserts that the videotape was exculpatory and that his conviction must have been the result of the jury seeing the Defendant's arrest after being administered this test which the jury was not supposed to consider. While we agree with the Defendant that the videotape was exculpatory evidence in this case, we cannot conclude that he was prejudiced by the depiction of the horizontal gaze nystagmus test on the videotape.

Officer McCollum testified that when he observed the Defendant, the Defendant had a strong odor of intoxicants about his person; that he had bloodshot and watery eyes; that his reactions were slow; and that his speech was slurred. Officer McCollum also testified about the Defendant's poor performance on the field sobriety tests. The jury was then shown the videotape, which in our opinion

appears to contradict Officer McCollum's testimony that the Defendant's speech was slurred, that his reactions were slow, and that he performed poorly on the field sobriety tests. Notwithstanding, all questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Obviously, the jury accredited the testimony of the officers regarding the Defendant's sobriety and/or had a different interpretation than does this Court of the Defendant's performance on the videotape.

In spite of our finding that the videotape was exculpatory, we cannot find that the Defendant was prejudiced by the admission of a video of the officer administering the horizontal gaze nystagmus test. Although the videotape does show Officer Coppley administering the test, that depiction reveals nothing about the Defendant's state of intoxication. It simply shows the officer shining a light in front of the Defendant's eyes. As asserted by our supreme court, a witness must explain the underlying scientific basis of the test in order for the testimony to be meaningful to a jury. Murphy, 953 S.W.2d at 202. The underlying basis of the test was not explained to the jury; neither officer testified about the test; and the jury was instructed to disregard it. The jury is presumed to have followed instructions to disregard evidence. State v. Walker, 910 S.W.2d 381, 396-97 (Tenn. 1995); State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim App. 1991). Moreover, the videotape reveals that the Defendant was informed prior to performing any tests that he was under arrest for suspicion of DUI. He was then administered the one-leg stand test, the walk and turn test, and finally the horizontal gaze nystagmus test. Because the Defendant was told on the tape that he was under arrest prior to taking any tests, the videotape does not give rise to the assumption that his performance on the horizontal gaze nystagmus test caused his arrest. Because we can find no prejudice to the Defendant due to the videotape, he is entitled to no relief. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

CONSTITUTIONALITY OF DUI SENTENCING STATUTE

The Defendant next argues that the DUI sentencing statute is void for vagueness because it sets forth two separate standards for determining whether a defendant is a multiple DUI offender. He asserts that the statute first states that the ten-year period for determining prior convictions runs from conviction of the last offense to conviction of the present offense, and then the statute contradicts itself by stating that the ten-year period runs from the date of the last conviction to the date of the present offense.

"A statute is void for vagueness if it is so vague, indefinite, and uncertain that persons must speculate as to its meaning, and if it fails to give a person of ordinary intelligence fair notice that his or her conduct is forbidden by the statute." State v. Whaley, 982 S.W.2d 346, 348 (Tenn. Crim. App. 1997); see also Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); United States v. Harriss, 347 U.S. 612, 617 (1954). However, "[t]he vagueness doctrine does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990); see also State v. Boyd, 925 S.W.2d 237, 243 (Tenn. Crim. App. 1995). The appellate courts have the duty to "adopt a construction which will sustain

a statute and avoid constitutional conflict if its recitation permits such a construction." Lyons, 802 S.W.2d at 592.

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). This Court is to determine legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000). Moreover, the legislature has provided that criminal statutes are to "be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104; see also State v. Owens, 20 S.W.3d 634, 640 (Tenn. 2000).

> The statute at issue provides as follows:
> For purposes of this section, a person who is convicted of a violation of [DUI] shall not be considered a repeat or multiple offender and subject to the penalties prescribed in subsection (a), if ten (10) or more years have elapsed between such conviction and any immediately preceding conviction for a violation. If, however, a person has been convicted of a violation of [DUI] within ten (10) years of the present violation, then such person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by the provisions of subsection (a). If a person is considered a multiple offender under this subdivision, then every conviction for a violation of [DUI], within ten (10) years of the immediately preceding violation shall be considered in determining the number of prior offenses, but in no event shall a conviction for a violation occurring more than twenty (20) years from the date of the instant conviction be considered for such purpose.

Tenn. Code Ann. § 55-10-403(a)(3) (emphasis added). The Defendant asserts that this statute is void for vagueness because in the first sentence, the statute asserts that a person convicted of DUI will not be a considered a multiple offender if ten or more years have passed between the present conviction and any immediately preceding conviction, but in the second sentence the statute asserts that if a person is convicted of DUI, that person will be considered a multiple offender if that person was convicted of DUI within ten years of the present offense. Thus, the Defendant asserts that in one sentence, the ten-year period is measured from date of conviction to date of conviction, but in the next sentence, the ten-year period is measured from date of offense to date of conviction.

We first note that under the Defendant's interpretation of the statute, his own conduct would still qualify him as a multiple offender. "[E]ven if a statute may be considered vague relative to its prohibiting certain conduct, it may be viewed sufficiently clear regarding other conduct." State v. Butler, 880 S.W.2d 395, 397 (Tenn. Crim. App. 1994). Thus, even if the statute is considered vague as to the triggers measuring the ten-year period, the Defendant's immediately preceding prior conviction is within the ten-year period, regardless of which way the time-frame is measured. The

Defendant has two prior convictions: one on March 23, 1990 and one on June 11, 1986. He was arrested for DUI on November 15, 1998, and he was convicted by a jury on January 26, 2000. Therefore, both the date of his present offense and the date of his present conviction are within ten years of his immediately preceding conviction. Because the Defendant's prior convictions are clearly within the ten-year period no matter how it is measured, the statute is not void for vagueness as applied to his conduct. Nevertheless, we have also considered the language of the statute, and we conclude that the statute itself is not void for vagueness.

We agree with the Defendant that the language used in the statute is confusing, and it certainly could have been more artfully drafted, but we do not believe that it is so "vague, indefinite, and uncertain that persons must speculate as to its meaning, [or that] it fails to give a person of ordinary intelligence fair notice that his or her conduct is forbidden by the statute." Whaley, 982 S.W.2d at 348. The first sentence of the statute clearly asserts that a DUI offender will not be considered a multiple offender if ten or more years have elapsed between the present conviction and any immediately preceding conviction. Tenn. Code Ann. § 55-10-403(a)(3). This sentence measures the ten-year period from the date of the present conviction to the date of the prior conviction. Thus, a person of ordinary intelligence is put on notice that if ten or more years have elapsed between DUI convictions, he or she cannot be considered a multiple offender. The next sentence of the statute then provides, "If, however, a person has been convicted of a violation of [DUI] within ten (10) years of the present violation, then such person shall be considered a multiple offender." Id. (emphasis added). The Defendant interprets the use of the words "present violation" to mean "present offense." He claims that this sentence measures the ten-year period from the date of the present offense to the date of the prior conviction. However, looking at the statute as a whole, we believe that the legislature used the words "violation" and "conviction" interchangeably in the statute.

Under any interpretation of these first two sentences, it is obvious that the legislature intended to look back into time at the date of the prior conviction, not the date of the prior offense, to determine whether a person is a multiple offender. See id. Yet, in the third sentence the statute asserts, "If a person is considered a multiple offender under this subdivision, then every conviction for a violation of [DUI], within ten (10) years of the immediately preceding violation shall be considered in determining the number of prior offenses." Id. (emphasis added). The legislature again used the term "violation," rather than "conviction" or "offense," when setting forth the ten-year measuring date. Nevertheless, this sentence is only applicable if a person has been found to be a multiple offender under the first part of the statute. If a person is a multiple offender under the first part of the statute, then the statute looks back an additional ten years to determine the number of prior offenses. It would create an absurd result to follow the first part of the statute and look back ten years to the immediately preceding conviction to determine whether a person is a multiple offender, and then, if the person is a multiple offender, look back ten years not from the date of this immediately preceding conviction but instead from the date of the immediately preceding offense to determine the number of prior DUI offenses. Yet, if the legislature meant the use of the term "violation" to mean "offense," this is just what the statute would require us to do. Moreover, in the last sentence the legislature limits the total number of years which may be examined in determining the number of prior offenses to twenty years "from the date of the instant conviction." Id. It is clear

that the legislature intended to prevent consideration of any prior convictions occurring more than twenty years before the instant conviction, rather than the instant offense. We do not see any reason for the legislature to have decided to measure the total number of years that can be considered from the instant conviction, while measuring the first ten-year period from the instant offense. Therefore, we conclude from "the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning," see Flemming, 19 S.W.3d at 197, that the legislature intended to measure the ten-year period, in all contexts, from conviction to conviction. We likewise conclude that this statute is accordingly not void for vagueness.

Furthermore, our interpretation of this statute is supported by its legislative history. Prior to 1998, the statute provided as follows:

> For purposes of this section, a person whose convictions for violating the provisions of § 55-10-401 [the DUI statute] occur more than ten (10) years apart shall not be considered a multiple offender and the penalties imposed upon multiple offenders by the provisions of subsection (a) do not apply to such person.

Tenn. Code Ann. § 55-10-403(a)(3) (amended 1998). This statute measured the ten-year period from conviction to conviction. See State v. Marvin E. Sizemore, No. 03C01-9209-CR-00326, 1994 WL 369733, at *2 (Tenn. Crim. App., Knoxville, July 15, 1994) (holding that the ten-year period is measured from conviction to conviction). In 1998, the legislature amended the statute by deleting this language and inserting the language at issue in this case. See 1998 Tenn. Pub. Acts 926. The bill summary used on all of the legislative calendars indicated that the purpose of the legislation was to "[c]larif[y] that subsequent violations of DUI law within ten years are to be considered when determining whether offender is multiple offender." The Senate sponsor asserted that the only change from current law was to create a "rolling ten year review," in which prior convictions occurring more than ten years from the instant conviction could be considered if the offender had a conviction within the first ten years. The House sponsor also asserted that the only change the legislation made was to take care of the problem of DUI offenders who might have three prior convictions, but only two convictions within the ten year time window; under the new law, all prior convictions could be considered. Thus, the legislative history establishes that the legislature did not intend to change the law so that the ten-year period would be measured from the date of the present offense to the date of the prior conviction, but the legislature intended to change the law so that prior convictions outside the original ten-year time period could be considered if an offender had a prior conviction within the original ten-year time period.[2]

---

[2] We note that another panel of this Court recently reached the same conclusion regarding the measurement of the ten-year time period using similar analysis. See State v. Sean W. Conway, No. M2000-01263-CCA-R3-CD, 2001 WL 487689, at *6-9 (Tenn. Crim. App., Nashville, May 8, 2001).

## CONCLUSION

We hold that the Defendant was not prejudiced by the admission of the videotape depicting the administration of the horizontal gaze nystagmus test and that the DUI sentencing statute is not void for vagueness. Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE