IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2025 Session

**STATE OF TENNESSEE v. STANLEY WILLIAM HAVENS**

**Appeal from the Criminal Court for Putnam County**
**No. 2022-CR-280    Caroline E. Knight, Judge**
———————————————————

**No. M2023-01601-CCA-R3-CD**
———————————————————

A jury convicted Defendant, Stanley William Havens, of driving under the influence of an intoxicant (DUI) and of driving with a blood alcohol concentration of .08% or higher (DUI per se), and it found that this was Defendant's third DUI offense for enhanced sentencing. The offenses were merged, and Defendant was assessed a fine and sentenced to serve 11 months and 29 days in confinement, with a release eligibility of 75%. Defendant appeals, challenging: (1) the sufficiency of the evidence; (2) the redacted video of the traffic stop; (3) the trial court's failure to excuse a juror for cause; (4) a statement during voir dire that he asserts constitutes prosecutorial misconduct; and (5) his sentence. We affirm and remand for entry of a corrected judgments in Counts 2 and 3.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed
and Remanded**

JEFFREY USMAN, SP.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

John B. Nisbet III, Cookeville, Tennessee, for the appellant, Stanley William Havens.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Rachel Bateman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.

Defendant was the subject of a traffic stop at approximately 3:15 a.m. on October 30, 2021. He admitted having consumed alcohol, and he performed poorly on field sobriety tests. Defendant was charged in Count 1 with DUI, in Count 2 with DUI per se, and in Count 3 with DUI, third offense. The trial was bifurcated so that no evidence of prior DUIs would be before the jury in the first phase of the trial.

During voir dire, the trial court asked the prospective jurors whether they could put aside any prejudices they might have about the offense of DUI. A prospective juror raised her hand and stated,

> And it may have nothing to do with this, but I feel in full transparency that I have to be truthful. My first husband was killed by a drunk driver in 1978. I had an 8-month-old baby at the time. And then ironically four or five years later, I married an alcoholic who was abusive physically, mentally, and emotionally. So I don't know if that will sway my opinion, but I just thought I should put that out there.

The trial court then described the presumption of innocence that would attach to Defendant, and asked the juror, "Do you believe that you can be fair and impartial and see this Defendant cloaked in innocence until such time as the State has met their burden of proof in the case?" The prospective juror responded in the affirmative. The prospective juror also volunteered that her husband was also a retired police officer. She affirmed multiple times that she "would be able to consider the proof fairly without bringing in [her] prior experiences." The juror was removed pursuant to a peremptory challenge. Overall, six jurors were excused through peremptory challenges, but the record does not reveal which party challenged each juror.

During voir dire, while explicating the standard of proof, the prosecutor told the prospective jurors an anecdote regarding her dog, Archie. In the anecdote, Archie, a lover of steaks, was left in the kitchen where a steak rested on the countertop while the prosecutor and her husband ate in the dining room. No one else was in the house. When the prosecutor returned to the kitchen, the steak was missing and a line of "steak juice" led from the counter to Archie, who was "licking his chops." The prosecutor submitted that the proof would establish beyond a reasonable doubt that Archie ate the steak, although there were no eyewitnesses and although it was theoretically possible that someone had broken into her home, taken the steak, and framed Archie. The defense did not lodge a contemporaneous objection to this anecdote. Later, in arguing about a jury instruction prohibiting the jury from speculating on the redacted portions of a video of the traffic stop, defense counsel argued that the anecdote "about the dog is exactly speculation." Defense counsel did not argue it was improper, nor did he ask for curative instructions or a mistrial. The prosecutor referred to this anecdote in closing argument, and no objection was lodged.

At trial, Trooper Dylan Culver testified that at around 3:15 a.m., he observed Defendant driving 78 miles per hour in a zone where the speed limit was 55 miles per hour. Trooper Culver pulled behind Defendant and activated his emergency equipment. He observed Defendant failing to maintain his lane, crossing over the center line with both left tires. When Defendant exited his vehicle, Trooper Culver observed that Defendant's speech was slurred, and he detected the odor of alcohol. Defendant acknowledged having consumed one or two drinks at a bowling alley. Defendant later stated he had consumed two to three whiskey drinks at a bar.

Trooper Culver asked Defendant to step out of the vehicle to perform field sobriety tests. Trooper Culver observed six out of eight possible "clues" to intoxication when Defendant performed the walk-and-turn test. He observed three out of four possible "clues" on the one-leg stand test. Trooper Culver testified that after the tests, Defendant stated, "I've got a buzz. I won't lie to you."

On cross-examination, Trooper Culver acknowledged the odor of alcohol emanating from Defendant was slight and that there was also a strong odor of cologne or air fresheners. He testified he had given Defendant three sobriety tests and that only two were on the redacted video.

Defendant was arrested, and his blood was drawn for analysis. Special Agent Jaqueya Ogilvie, a forensic scientist with the Tennessee Bureau of Investigation (TBI), testified as an expert that she tested Defendant's blood and found a blood alcohol content of 0.188 gram percent. She stated that alcohol consumption impairs the ability to perform tasks that require divided attention, such as driving, and that she would expect to see impairment in driving with Defendant's level of alcohol in the bloodstream. She testified that a person would have to consume eight to ten drinks within 15 minutes on an empty stomach to have that amount of alcohol in the bloodstream. She agreed that liver malfunction would affect the rate at which alcohol was eliminated from the body.

Prior to trial, the State expressed its intention to introduce a redacted video of the traffic stop. Defense counsel objected under the rule of completeness in Tennessee Rule of Evidence 106 to the State introducing a redacted video. The State argued that it had only redacted the video to remove inadmissible evidence consisting of statements referencing Defendant's prior DUI convictions. The prosecutor requested the court to permit the State to play the redacted video and to permit Defendant to introduce the entire video, should Defendant choose to do so.

The trial court agreed that the authority cited by the State permitted it to exclude inadmissible prior convictions notwithstanding Rule 106. The court concluded,

Based on all of that, this Court finds that the State may play the redacted version of the video, which excludes those statements and that evidence of Mr. Havens' prior driving under the influence convictions. Additionally, the State will grant the Defendant, Mr. Havens, equal opportunity to put on and establish whatever proof as he sees fit.

During trial, the State introduced the redacted video of the traffic stop over defense counsel's objection. The video is generally consistent with Trooper Culver's testimony. Defendant initially acknowledged having consumed one or two drinks, and he later said two or three. He told Trooper Culver that, as an auto mechanic, he walked around a significant amount. Defendant had a bout of coughing at the beginning of the field sobriety tests and then stated he had a hard time with his breathing and would have a hard time with the walk-and-turn test. Defendant almost fell over during the test. He stated he had heart and other issues prior to the one-leg stand test. Defendant's speech was slurred, but he explained that he had false teeth. Defendant told Trooper Culver he began drinking "a couple" of hours ago. Asked about his departure from the bar, he said that he had been told he needed to "head home." Defendant then made the statement, "I got a buzz. I won't lie to you."

On cross-examination of Trooper Culver, defense counsel referred to the "pieces missing" from the video, and the State objected. In a jury-out hearing, defense counsel indicated he wanted to question Trooper Culver about his administration of the horizontal gaze nystagmus (HGN) test. The State opposed the defense introducing the outcome of the HGN test, noting that the testimony, coming from the Trooper rather than an expert, was inadmissible in Tennessee. *See State v. Murphy*, 953 S.W.2d 200, 203 (Tenn. 1997). The State objected to the insinuation made to the jury that the State was withholding exculpatory evidence by redacting the video, noting defense counsel could "play the HGN portions of the video." Defense counsel then candidly revealed, "My whole defense is, 'What's the State leaving out?'"[1]

The court reiterated that Defendant was free to introduce the unredacted video:

Having said that though, [defense counsel], on behalf of the Defendant, you may certainly question the trooper about whether other tests were administered. I think your question of whether all tests factored into his decision to arrest is fair game. But I think if you want to get into more specific questions regarding the HGN, then it will be your responsibility, sir,

---

[1] Indeed, in his opening statement, defense counsel urged the jury to "pay attention to what the State doesn't show you," i.e., the unredacted portion of the video.

- 4 -

to lay that foundation, play the video. And that will be your choice in your presentation of the proof, whether you play that portion of the video or the entire video, if you choose for the jury. As you articulated well, you have a defense to put on in the manner that you see fit.

Defense counsel continued to raise the issue, and the trial court agreed with the State that statements regarding the prior DUIs would be "highly prejudicial." The court stated, "And so I think that you can play that video, but I think you have to be prepared with a version that is also redacted to exclude evidence in those two subject matter areas."[2] Defense counsel was not prepared to introduce either the unredacted video or a slightly redacted video excluding the references to prior DUIs. Defense counsel stated he intended to file the unredacted video at or before the sentencing hearing but acknowledged he did not have it at trial. He did not request a continuance. Defense counsel did not introduce any video evidence to the jury.

The unredacted video filed at sentencing shows that the excised portions of the video contain the administration of the HGN test, statements from dispatch regarding Defendant's prior DUI convictions, and Defendant's own statements that he had prior DUI convictions. Defendant more than once acknowledged he had "a buzz." He attempted to solicit Trooper Culver's advice regarding the implied consent form, observing, "If I let them do it, then . . . I'll probably come back . . . drunk. It'll be one point over or right at the level." He stated, "I guarantee you it'll come back over." The entire unredacted video is approximately 50 minutes, and the parts not summarized consist mainly of non-events, such as Trooper Culver gathering Defendant's belongings and securing Defendant's car, Defendant's requests to Trooper Culver for leniency, and the car ride to the police station.

Defendant chose to testify regarding the events of the night. Defendant had been using oxygen for two years and had a bad cough on the night of the traffic stop. He suffered from a lung condition, heart condition, and black mold poisoning. Defendant had gone bowling and then to a bar.

On cross-examination, Defendant testified he normally drank whiskey but denied he had consumed several drinks. He testified that he limited himself to two drinks and "[v]ery seldom" had more. He agreed that the video reflected that he acknowledged having consumed two to three drinks. Defendant denied that the bar had asked him to leave and did not recall stating so on the video. After a portion was replayed, he explained, "They c[a]me out and told me I needed to go home. I was in a parking space that I had backed up into fixing to pull out. And they c[a]me out and told me I needed to go home. And I

---

[2] It is not entirely clear if the court was speaking of the references to prior DUIs or also the HGN test.

told them that's where I'm headed." Defendant explained that bar personnel were not instructing him to depart but instructing him regarding his destination. He acknowledged he drove home knowing he was "buzzed." He testified that it would take four to six drinks of whiskey to make him feel "buzzed." However, he reiterated he did not consume that many drinks. He agreed that Trooper Culver stopped him on the way home from the bar.

Defense counsel objected to the trial court's proposed jury instruction that the jury was not to speculate as to the content of the redactions or draw any conclusions from the fact that redactions had been made. The trial court noted that the instructions came from the pattern jury instructions, and defense counsel again acknowledged that his defense was to insinuate that the redacted portions of the video were detrimental to the State's case (although they were not), and he asserted that telling the jury not to speculate would "thwart" this defense. The trial court noted during the presentation of proof that it would consider removing this instruction if the largely unredacted video, missing only the references to prior DUIs, were played. Defense counsel stated that if the jury was charged after closing argument "basically I can argue what I want to argue," but counsel asserted he would not be able to present the argument if the jury were charged prior to closing argument. The court agreed to instruct the jury after closing argument that they were not to speculate on the content of the redacted portion of the video, but counsel nevertheless did not encourage speculation in his argument or argue about what was left out.

The judge proposed jury instructions on statements against interest, and defense counsel objected. Counsel's rationale was that Defendant's statements regarding having consumed two to three drinks and being buzzed, do "not equate to proof of a DUI." The State argued the statements were against Defendant's interest. The trial court included the instruction that the jury should determine whether a statement against interest was made, the truth of the facts in the statement, the circumstances under which it was made, and what weight to give it.

The jury returned a guilty verdict on DUI in Count 1 and DUI per se in Count 2. At the second half of the bifurcated trial, the State introduced evidence that Defendant had previously been convicted of two DUI offenses. The jury returned a verdict of guilty for DUI, third offense, and imposed a $10,000 fine.[3]

---

[3] We note that the procedures relating to the DUI, third offense conviction exhibited irregularities in that the jury was charged, closing argument waived, and the jury instructed, "you may again now retire to consider your verdict" prior the State expressing its intent to introduce any proof whatsoever on the existence of prior convictions for DUI. The jury was excused for a brief period while the parties discussed the method of introducing the proof, and the jury then returned to the courtroom for the introduction of the prior convictions. No issue regarding deliberations has been raised, however, on appeal.

At sentencing, Defendant testified that he was in poor health and needed to use oxygen 99% of the time. He stated he did not think he could survive a whole year in jail. Defendant made a statement in the sentencing report that at the time of the offense, he was suffering from low air and had only consumed two drinks; he stated he had not consumed alcohol since. The trial court stated it had reviewed the purposes and principles of sentencing, the evidence, and the presentence report. The court noted that the only argument for probation had been Defendant's health. It applied enhancement factor (10), that there was no hesitation about committing a crime where the risk to human life was high. The court noted Defendant was speeding and failed to maintain his lane, that he admitted to drinking, and that he had slurred speech and performed poorly on the sobriety tests. The court noted that Defendant's claim that he had two drinks was contradicted by both the toxicology report and his own prior statement that he had consumed more than two drinks. The court imposed a sentence of 11 months and 29 days in confinement, to be served at 75%.

Defendant moved for a new trial, asserting, as pertinent on appeal, error in the introduction of the redacted video, the failure to excuse a juror for cause, the prosecution's relating the story about Archie the dog, and the jury instructions. The trial court denied the motion for a new trial.

Defendant appeals. On appeal, Defendant challenges the sufficiency of the evidence, the redaction of the video, the failure to excuse the juror for cause, the prosecutor's story about Archie the dog, and sentencing.

II.

Defendant challenges the sufficiency of the evidence. Defendant presents no legal argument to support this challenge. He instead simply provides an overview of the evidence and asserts the evidence is insufficient.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question on appeal is whether, "after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). The court begins with the language of the statute and then analyzes the evidence from trial to determine if each element of the offense has been proven beyond a reasonable doubt. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial court, accredits the State's witnesses and

resolves all conflicts in favor of the prosecution. *Stephens*, 521 S.W.3d at 724. The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we "afford the State the strongest legitimate view of the evidence and any reasonable inferences that can be drawn from the evidence." *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

Here, the jury returned verdicts finding that Defendant committed DUI, that he committed DUI per se, and that this was his third DUI offense. Under Tennessee Code Annotated section 55-10-401,

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]
>
> (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more. . . .

Tenn. Code Ann. § 55-10-401.

Here, to support the conviction for DUI, the State introduced evidence that Defendant was driving an automobile on a public highway. Defendant acknowledged having consumed alcohol, an intoxicant. He acknowledged that he was "buzzed." Trooper Culver testified that Defendant was speeding, failed to maintain his lane, and failed two field sobriety tests. The video shows Defendant's poor performance on the tests. Expert testimony established that Defendant's blood alcohol concentration was 0.188%. Expert testimony also established that the amount of alcohol found in Defendant's blood would impair a person's ability to perform divided-attention tasks such as driving.

- 8 -

Additionally, any person found in violation of Tennessee Code Annotated section 55-10-401 "shall, upon conviction for third offense," be subject to enhanced sentencing. Tenn. Code Ann. § 55-10-402(a)(3)(A) (effective May 11, 2021, to June 30, 2023). "A prior DUI conviction is merely used to enhance a sentence for DUI and is not an element of DUI, second or subsequent offense . . . . Nevertheless, the State must prove the prior conviction beyond a reasonable doubt." *State v. Groseclose*, No. E2019-01721-CCA-R3-CD, 2020 WL 6075707, at *3 (Tenn. Crim. App. Oct. 15, 2020) (internal citations omitted). Here, the judgment forms for Defendant's two prior convictions for DUI were introduced into evidence at the bifurcated trial through the testimony of Trooper Culver.

Accordingly, the evidence, when viewed in the light most favorable to the State, established that Defendant was operating an automobile on a public highway, that he was under the influence of an intoxicant which impaired his ability to operate the vehicle, that his blood alcohol content was above the legal limit, and that this was his third DUI offense. We conclude that the evidence is sufficient to support the verdicts.

The transcripts, the verdict forms, and an "Order of Conviction" reflect that the jury found Defendant guilty of DUI, DUI per se, and found that this was his third DUI offense. However, the judgment forms state the DUI per se charge was dismissed, as the "nolle prosequi" box is checked. The judgment forms also list DUI per se as Count 3 rather than Count 2, as the indictment and verdict forms do. We remand for any necessary correction of the judgment forms. *See also State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015) ("When the jury returns guilty verdicts on multiple offenses that eventually will be merged, the best practice is for the trial court to impose a sentence on each count and reflect the sentence on the respective uniform judgment document.").

### III.

Defendant next argues he was denied his right to present a defense by the trial court's purported exclusion of the unredacted videotape.[4] The State argues that the evidence was not excluded.

We begin by noting that defense counsel, when asked at oral argument whether he was permitted to play the entire video, stated that he was not prevented by the trial court from playing the unredacted video, acknowledging, "[The judge] said I could. I did not

---

[4] The issues statement in Defendant's brief appears to identify as an issue the admission of the redacted tape rather than exclusion of the unredacted tape, but the argument in the brief asserts it was the exclusion of the unredacted tape that violated Defendant's right to present a defense. This court has experienced some difficulty in following Defendant's briefing as to this issue. At oral argument, defense counsel stated to the court, "My real issue is stated in a footnote of the State's brief." Such briefing does not augur well for success on appeal.

have a copy of it and [was not] in a position to play it." Defense counsel agreed that he, in fact, actually wanted the State to play the redacted video, which was edited for his benefit, so that he could urge the jurors to draw a negative inference *against the State* based on the fact that the video was incomplete.[5] Counsel asserted that although "they offered me the ability" to play the video, he was unprepared with a copy of the video. He did not seek a continuance. Defense counsel candidly acknowledged to this court that he did not, in actuality, want to play the unredacted video; instead, he wanted a redacted video in front of the jury so that he could imply the State was committing some misconduct in effectuating the redactions.[6]

---

[5] The following exchanges took place at oral argument:

> Judge McMullen: The State says that's just simply not true. The trial court gave you the opportunity to play the entirety of the video.
>
> Defense counsel: She said I could. I did not have a copy of it and [was not] in a position to play it.
>
> . . . .
>
> Judge McMullen: . . . [T]he State had given you a copy of their redacted version of the video . . .
>
> Defense counsel: Correct.
>
> Judge McMullen: . . . in advance of trial.
>
> Defense counsel: Yes.
>
> Judge McMullen: And you knew that the State was going to present a redacted video.
>
> Defense counsel: And I wanted them to play the redacted video.
>
> Judge McMullen: Well, of course, because they had excluded inadmissible evidence from the video, right?
>
> Defense counsel: I wanted them to play their video because I was then going to argue to the jury, "What are they leaving out?"
>
> . . . .
>
> Judge Usman: . . . [Y]ou're saying that the trial judge didn't allow you [to play the video], and I'm struggling to see how we can read [a previously-quoted section of the transcript] as anything other than the trial judge did allow you to play the whole video. You may not have been prepared to play the whole video . . . .
>
> Defense counsel: . . . [S]he did — I guess you're right, Judge, she did allow me to play it, and I chose not to. That's probably the short answer.

[6] Defense counsel described the strategy thus:

> Judge Easter: So, as I understand, your position is that you . . . didn't want the whole thing played to the jury so you could make this argument of "What are they hiding from you?"

There is a certain brashness in defense counsel's position. He asserts that he should have been entitled to urge the jury to draw a negative inference against the State based on redactions of material which he knew to be inculpatory to the Defendant, which he did not want to put before the jury, and which the trial court indicated he could present to the jury. Although it is unclear from the record whether the trial court's final determination was that the entire, unredacted video could be introduced into evidence or that the defense could only introduce a longer version of the video, taking out solely the inculpatory statements regarding prior DUIs, Defendant was not prepared to introduce any video and has, in fact, candidly admitted he had no intention or desire to do so. Defendant had no video on hand and made no attempt to play or introduce any video. Defendant's concession that the evidence was not excluded is the death knell for his claim that exclusion of the evidence denied him the right to present a defense. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Defendant's alternative claim, that he was entitled to introduce the entire video under Tennessee Rule of Evidence 106, also withers and dies under Defendant's factual admission that nothing prevented him from introducing the video. *See* Tenn. R. Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."). Defendant also does not explain how the remainder of the tape should "in fairness" have been considered by the jury; instead, he acknowledges that he was in fact striving to keep out the remainder of the tape, which featured statements about Defendant's prior DUIs and his inculpatory statements that he would "guarantee" the blood test would come back over the legal limit.

Insofar as Defendant raises any issues with the jury instructions in this section of his brief, they likewise fail. His argument regarding the instruction on statements against interest asserts not that the instruction was faulty but that the jury could not consider the circumstances of his statement about being "buzzed" without viewing the whole video; accordingly, this argument is premised on the purported exclusion of the video that he

Defense counsel: In essence, Judge, you're exactly right.

Judge Easter: . . . What if they're — the fact that the officer told your client, "This is your third DUI." Would you want that played to the jury, too? Are they hiding something there?

Defense counsel: There's a whole lot there I don't want in.

concedes was not excluded. Because he did not attempt or desire to introduce the video, or seek a continuance to do so, this claim must fail. *See* Tenn. R. App. P. 36(a).

Defendant likewise objects to the instruction that the jury was not to speculate as to the redacted portions of the video. However, Defendant has not articulated any legal basis to conclude the instructions were erroneous.[7] Insofar as these issues are raised, Defendant is not entitled to relief. *See State v. Hester*, 324 S.W.3d 1, 80 (Tenn. 2010) ("A reviewing court may deem an issue waived when a party fails to develop an argument in support of its contention or merely constructs a skeletal argument.").

IV.

Defendant also argues in his brief that the trial court should have excused for cause the juror whose husband was killed by a drunk driver, asserting she did not unequivocally demonstrate that she could be impartial. The State responds that Defendant waived this issue because he did not challenge the juror for cause and did not demonstrate prejudice. At oral argument, Defendant stated that he would withdraw this issue from consideration.[8] Accordingly, this issue is no longer before us.

V.

Defendant also asserts that the prosecution's anecdote regarding Archie the dog's theft of a steak, used to illustrate the quantum of proof necessary to establish guilt beyond a reasonable doubt, was somehow improper. Despite having more than one chance to confront the tale of Archie and the incriminating trail of "steak juice," Defendant lodged no objection either at opening or at closing argument. Accordingly, this issue is waived.

---

[7] Defendant sought to imply to the jury, contrary to the facts, that the redactions were favorable to Defendant, but counsel was under a duty not to allude to matters unsupported by fact. Tenn. Sup. Ct. R. 8, RPC 3.4(e)(1).

[8] Defendant withdrew the issue in the following exchange:

> Defense counsel: The issue about the juror that should have been excluded, although I asked the . . .
>
> Judge McMullen: She was excluded, correct?
>
> Defense counsel: I excluded her, yes, and so I didn't have, I don't have the argument that, that I had . . .
>
> Judge McMullen: Then I ask if you withdraw that issue for purposes of our response to . . .
>
> Defense counsel: Yes, ma'am.
>
> Judge McMullen: . . .to your — so you do withdraw Issue 2 [as listed in the brief].

*See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Moreover, Defendant has waived the issue on appeal by failing to properly brief it or argue it. We have recognized five general areas of prosecutorial misconduct in argument: 1) intentionally misstating evidence or misleading the jury regarding inferences it may draw; 2) expressing personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; 3) using argument calculated to inflame the passions or prejudices of the jury; 4) using argument which would divert the jury from its duty to determine facts based on evidence by interjecting issues broader than the guilt or innocence of the accused or by making predictions regarding the consequences of the verdict; and 5) intentionally referring to or arguing facts outside the record unless they are matters of common public knowledge. *State v. Sexton*, 368 S.W.3d 371, 419 (Tenn. 2012), *as corrected* (Oct. 10, 2012) (citing *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003)).

Defendant has presented no argument that the prosecutor intentionally misstated evidence, improperly expressed a personal belief, made inflammatory statements, diverted the jury from its duty to decide the case on the facts presented, or argued facts outside the record. There is nothing presented to explain how the Archie story was a foul blow, or even a hard one. *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008) ("[W]hile prosecutors 'may strike hard blows, . . . [they are] not at liberty to strike foul ones.'" (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935))). Because Defendant has articulated no basis to conclude that the tale of Archie's misbegotten dinner was improper or inflammatory, the issue is waived. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *Hester*, 324 S.W.3d at 80 ("A reviewing court may deem an issue waived when a party fails to develop an argument in support of its contention or merely constructs a skeletal argument.").

The State likewise notes that, insofar as Defendant asserts plain error, he has not presented an argument establishing plain error. While Defendant uses the words "plain error" in the heading of this section of his brief, he nowhere identifies the factors applicable to plain error, nor does he analyze how the factors would apply to the facts at issue. *See State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014). Assuming *arguendo* that Defendant has endeavored to advance a plain error argument, we agree with the State that Defendant's failure to present argument on how this issue meets the requirements for plain error relief in any event precludes relief. Tenn. Ct. Crim. App. R. 10(b); *Hester*, 324 S.W.3d at 80.

VI.

Defendant also challenges his sentence. He asserts the court included no reason for requiring Defendant to serve 75% of the sentence imposed. The State responds that the trial court was well within its discretion.

A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Under *Bise*, a sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. This court has on many occasions applied the *Bise* standard in reviewing misdemeanor sentences. *See State v. Hite*, No. E2023-00563-CCA-R3-CD, 2024 WL 3913193, at *4 & n.2 (Tenn. Crim. App. Aug. 23, 2024) (citing cases applying the *Bise* standard). The same standard applies on reviewing the trial court's decisions regarding probation and alternative sentencing. *State v. Jones*, No. W2022-01270-CCA-R3-CD, 2023 WL 3451553, at *2 (Tenn. Crim. App. May 15, 2023), *perm. app. denied* (Tenn. Aug. 9, 2023) (citing *Bise*, 380 S.W.3d at 707; *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012)).

In imposing a misdemeanor sentence, the trial court should consider the purposes and principles of sentencing, including the imposition of a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

By statute, a person convicted of DUI, third offense "shall . . . be sentenced to serve in the county jail or workhouse not less than one hundred twenty (120) consecutive days nor more than eleven (11) months and twenty-nine (29) days." Tenn. Code Ann. § 55-10-402(a)(3)(A). Furthermore, in subsequent DUI cases, "[a]ll persons sentenced under this part shall, in addition to service of at least the minimum sentence, be required to serve the difference between the time actually served and the maximum sentence on probation." Tenn. Code Ann. § 55-10-402(e). Accordingly, Defendant was required to serve the difference between his sentence of confinement and the 11 month and 29 day maximum on probation. Insofar as Defendant seeks to challenge the length of the sentence, the trial court's discretion is bounded by this provision. Accordingly, we review the decision to impose a 75% release eligibility date.

When imposing a sentence of confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

- 14 -

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); *see State v. Smith*, No. No. M2022-00646-CCA-R3-CD, 2023 WL 3221092, at *6 (Tenn. Crim. App. May 3, 2023) (Tenn. Code Ann. § 40-35-103 is used in determining manner of sentence for both felony and misdemeanor sentences). Misdemeanor sentencing is in general governed by Tennessee Code Annotated section 40-35-302, and "[a]n individual convicted of a misdemeanor has no presumption of entitlement to a minimum sentence." *Smith*, 2023 WL 3221092, at *3 (citing *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999)).

"In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence that the defendant shall serve." Tenn. Code Ann. § 40-35-302(d) (effective July 1, 2021, to April 21, 2024).[9] A trial court's designation of a release eligibility percentage for a DUI cannot reduce the mandatory minimum DUI sentence. *State v. Hite*, 2024 WL 3913193, at *4 (citing Tenn. Code Ann. § 40-35-302(d); *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995)).

Here, the trial court imposed a sentence of 11 months and 29 days, with a 75% release eligibility. The court applied enhancement factor (10), that there was no hesitation about committing a crime where the risk to human life was high, based on Defendant's excessive speed, his failure to maintain his lane, and other clues indicating a high degree of impairment while driving. The traffic stop took place in light rain on wet roads, and the video showed several other vehicles on the road. *See State v. Baker*, No. M2008-01188-CCA-R3-CD, 2009 WL 2474670, at *5 (Tenn. Crim. App. Aug. 13, 2009) (a DUI inherently involves risk to human life, and enhancement factor (10) is applicable when there is proof that others were either in the vicinity or placed at risk by Defendant's conduct). The trial court further found that Defendant's repeated insistence that he had only consumed two alcoholic drinks was inconsistent with his prior statements and with the physical proof. The trial court considered the purposes and principles of sentencing,

---

[9] At the time, the statute stated, "The percentage shall be expressed as zero percent (0%), ten percent (10%), twenty percent (20%), thirty percent (30%), forty percent (40%), fifty percent (50%), sixty percent (60%), seventy percent (70%) but not in excess of seventy-five percent (75%). Tenn. Code Ann. § 40-35-302(d)." This provision was subsequently amended to allow trial courts to impose service of up to 100%. 2024 Tenn. Pub. Acts Ch. 743 § 1.

concluding that Defendant's lack of candor and dangerous driving warranted confinement beyond the minimum 120 days required. *See State v. Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013) (risk to other drivers was high); *State v. Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *14 (Tenn. Crim. App. Mar. 12, 2019) ("The court determined that the Defendant lacked truthfulness, that confinement was necessary to avoid depreciating the seriousness of the offense, and that incarceration provided an effective deterrent."). Defendant has not demonstrated that this sentence does not reflect a proper application of the purposes and principles of sentencing under *Bise*. Accordingly, we affirm.

## VII.

Based on the foregoing analysis, the judgments of the trial court are affirmed. We remand for any necessary correction of the judgment forms.


s/ Jeffrey Usman
JEFFREY USMAN, JUDGE